WILLIAM E. ARENSMEYER, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY.

Division One, January 3, 1914.

1. CONTRACTS: Employment as Insurance Agent: Renewal Commissions. When an insurance superintendent's contract with his company provides that upon the termination of his employment all his interest in fees and commissions shall cease, he is not entitled to renewal commissions on premiums falling due and paid after his abandonment of the service.

2. ———: ———: ———: Modification. The modification by an insurance company of its rates to superintendents on renewal commissions, a change authorized by the original contract of employment, does not abrogate the superintendent's original contract with the company nor a clause therein that upon the termination of his agency his right to commissions should cease.

3. ———: ———: ———: ———: Subsidiary Agreement. A clause in an insurance superintendent's contract of employment, that his interest in renewal commissions shall cease

with his employment, is not abrogated by the company's stating, upon his transfer from one district to another, that he will retain an equitable interest in business created by him in the old district and acquire a like interest in the new district. These interests remain terminable upon the termination of his agency.

4. ——: ——: ——: ——: **Consideration.** Where, in an action by a district superintendent of an insurance company for renewal commissions payable after his agency had terminated, it appears that the company told him, upon his transfer from one district to another, that he would retain an equitable interest in the business created by him in the old district and acquire a like interest in the new one, it cannot be held, in the face of a clause in his contract of employment providing that his interest in fees and commissions would cease with the termination of his agency, that the equitable adjustment at the time of the transfer constituted the consideration for a new contract of employment superseding the old one, there being no showing that plaintiff conditioned his acceptance of the transfer upon anything the company might or might not do concerning renewal commissions, or that he knew or even inquired what arrangement would be made, and no contract having been pleaded to remove to the new district in consideration of the adjustment.

5. ——: ——: ——: ——: **Retroactive Clauses.** Plaintiff's original contract of employment with defendant insurance company provided that upon the termination of his agency his interest in all fees and commissions should cease. Upon transferring him to a new district as superintendent the company sent him for signature a contract identical with the original agreement, except that the renewal commission period was reduced on most policies. Plaintiff replied that it was acceptable provided it was not retroactive, and the company assured him it was not retroactive, but that they had since found his signature to the original contract and therefore they asked for the return of the new agreement. Plaintiff continued in the employment for some time after the transfer, but then left it and now sues for certain renewal commissions falling due after the termination of his agency. *Held,* that he cannot recover. It would be absurd to say that plaintiff in objecting to giving to the proposal submitted a retroactive effect meant to object to a provision in it (that relating to termination of interest in commissions on termination of agency) which was identical with an essential part of the only contract under which he had any right to renewal commissions and which part the company did not propose to change with respect to future business.

6. ————: **Freedom of Contract.** *Held*, that plaintiff's contract of agency for defendant insurance company was one which the parties had a legal right to make and did make, and the court cannot substitute another for it.

7. **REFERENCE: Appeal: No Cause of Action: Nonprejudicial Error.** Where plaintiff bases his right to recovery upon written and printed documents which show that he has no cause of action, he was not prejudiced by error, if there was any, in a reference of the case.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*Reynolds & Harlan* for appellant.

(1) The reference in this cause was erroneous. (a) Reference is a matter of purely statutory right, and unless the case in which it is asked or in which it is granted is within the statute, the parties not consenting, the court has no power to grant it. Tool Co. v. Spring Co., 146 Mo. App. 31; Ice Co. v. Tamm, 138 Mo. 385. (b) As the statute (Sec. 1996, R. S. 1909) is an exception to the right of trial by jury, this court will not extend its meaning; a case should clearly appear to fall within the letter and principle of the statute before a party can be deprived of his jury trial. Ice Co. v. Tamm, 138 Mo. 385; Barger v. Beach, 142 Mo. App. 389. (c) Whether or not a case may be referred over the objections of a party to the suit must be determined in each case by the pleadings and the issues raised by the parties themselves. Investment Co. v. Bank, 96 Mo. App. 125. (d) In this case the issues are simple, it appearing from the pleadings that the question is not what commissions appellant is entitled to, but whether he is entitled to any commissions, the amount not being in dispute between the parties, or easily ascertained, and not requiring a complicated or tedious examination of a long account by the jury. Barger v. Beach, 142 Mo. App. 389; Snyder v. Crutcher, 137 Mo. App. 121. (2) (a) Appellant

acquired a right to his renewal commissions the moment a policy was issued, and the termination of his employment by the respondent company did not affect this right. Assurance Soc. v. Brinker, 77 N. Y. 435; Hale v. Ins. Co., 120 N. Y. 294; Ins. Co. v. Nexsen, 84 Ind. 347; Scrimplin v. Life Association, 98 N. W. 613; Heyn v. Insurance Co., 192 N. Y. 1; Perry v. Casualty Co., 72 Atl. (N. H.) 369; Burleson v. N .W. M. I. Co., 86 Cal. 342. In all cases the construction to be placed upon the contract depends upon the language of the particular contract in question, and the construction placed upon the same by the parties in carrying out the terms thereof. Cases cited supra under this point. (b) The clauses contained in the various manuals delivered to appellant, his receipt dated January 16, 1893, at East St. Louis, nor the letter of January 5, 1900, so far as the same undertake to limit the appellant's right to renewal commissions were no part of his contract with the respondent, as the same existed at the time appellant ceased to be the respondent's agent in 1904, said provisions not being embodied in said contract as it existed in 1904, or referred to therein or called to the appellant's attention in such manner as to be binding upon him. McDonald v. Life Ass'n, 154 Mo. 618; Railroad v. Stewart, 79 Md. 487; Stocker v. Partridge, 25 N. Y. Sup. Ct. 193; Riley v. Brooklyn, 46 N. Y. 444; Railroad v. Mfg. Co., 16 Wall. 318; Railroad v. Doyle, 142 Fed. 669; Hutchison on Carriers, sec. 415; Page on Contracts, sec. 75; Robinson v. Benevolent Ass'n, 132 Mich. 695; The Majestic, 166 U. S. 373; Railroad v. Sayles, 87 Fed. 444; Blossom v. Dodd, 43 N. Y. 264; Madan v. Shepard, 73 N. Y. 329; Riordan v. Doty, 50 S. C. 537; Lawson v. Waite, 103 Wis. 244. A writing designed to supersede a former writing is not to be construed in connection with such former one in order to determine the intention of the parties. Overbeck v. Park & Club Ass'n, 17 Mo. App. 310; McClurg v. Whitney, 82 Mo. App. 625.

*Nathan Frank* and *Richard A. Jones* for respondent.

(1) The court properly ordered reference of the cause. There was involved therein not only an examination and determination of various items of a long account (Sec. 1996, R. S. 1909), but also a most intricate one. The difficulty, detail and intricacies of such undertaking is in a considerable measure apparent from the allegations of the petition of plaintiff and the evidence fully establishes it. (2) (a) Under the general regulations and rules of respondent applicable to its superintendents, as well as under his express agreement in such regard, appellant was not and is not entitled to receive any renewal commissions after the termination of his employment. King v. Raleigh, 100 Mo. App. 1; Burleson v. Ins. Co., 86 Cal. 342; Jacobson v. Ins. Co., 61 Minn. 330; Scott v. Ins. Co., 103 Md. 69; Stagg v. Ins. Co., 10 Wall. 589; Ins. Co. v. Hollaway, 51 Conn. 310. (b) The evidence of appellant altogether fails to support the burden of proof of establishing a change or modification in the respect suggested of the contract as originally made by virtue of which he was appointed superintendent of respondent; fails to present that definite mutual understanding and meeting of the minds of the contracting parties necessary to form a basis upon which to found an inference to such end. Clark on Contracts, p. 612; Sutter v. Raeder, 149 Mo. 297; Utley v. Donaldson, 94 U. S. 29; Harrison v. Railroad, 74 Mo. 364; Walsh v. Lurmey, 106 N. W. 447. (c) Not only appellant's express agreement in such regard but the usages and rules of the business in which employed and all the circumstances connected with the subject-matter involved, rebut the assumption of the existence of an understanding that he should be paid renewal commissions after his employment with respondent was terminated or that there was any understanding, or modification of the original agreement in such re-

gard. Davis v. Hendricks, 50 Mo. App. 444; Car Co.
v. Railroad, 121 Fed. 609; Rockefeller v. Merrill, 76
Fed. 909. (d) The letter of April 6, 1903, simply re-
fers to one element of the matter at hand; that con-
tained in the manual under the head "Commissions"
and not to that under the head "Limitations on Com-
missions" and simply results in a modification to that
extent and no more, without in any manner affecting
the general agreement contained in respondent's con-
tract and set forth in the manuals under the last
named head. Clark on Contracts, 611; Savings &
Loan Co. v. Wackenrender, 111 Cal. 471; Haynes,
Spencer & Co. v. Baptist Church, 88 Mo. 285; Ice Co.
v. Steam Eng. Co., 22 N. J. Eq. 72; Trust Co. v. Ells-
worth, 129 Wis. 349. (3) The evidence in the cause
fully supports the finding of the referee and the con-
clusions drawn therefrom, and the law governing such
condition of fact was properly applied thereto.

BLAIR, C.—Defendant is a life insurance com-
pany. Plaintiff entered its employ in 1888, and in
1893 became one of its district superintendents and
served in that capacity in different districts until
August 13, 1904, when his connection with the com-
pany was severed. He brings this action to recover
renewal commissions on premiums on certain life in-
surance policies issued during his superintendency
over the St. Louis, North, and the Joliet districts of
which he had charge, successively, just prior to his
leaving the company's service.

There was a judgment for defendant, and plain-
tiff appealed.

At the beginning of 1893, plaintiff, then an as-
sistant superintendent in St. Louis, Missouri, was
made a district superintendent and assigned to the
East St. Louis district. His contract as district super-
intendent related solely to his duties and compensation
in prosecuting the industrial branch of defendant's

business, industrial insurance including only policies
for less than $500 on which the premiums are paid in
small, and usually, weekly installments. Plaintiff
claims no right to recover anything under this contract
or at all in connection with the industrial business
done under his supervision.

Plaintiff testified that at the time he took charge
of the East St. Louis district he signed the following:

"Ordinary Department. East St. Louis, Jan. 16,
1893. To the Metropolitan Life Insurance Company:
I hereby acknowledge that I have received your cir-
cular letter of March 1, 1892, containing the manual
for the use of the agents of the ordinary department
of your company, by which I am appointed an agent
of the ordinary department. I accept the appoint-
ment and agree to be bound in all respects both as to
services and compensation and as to the conduct of
my business as 'ordinary' agent by the terms of the
said circular and manual; and I further agree to obey
and abide by all the rules therein contained, and all of
the amendments thereto and alterations thereof which
hereafter may be made by you, including any and all
changes and modifications thereof as to duties or as
to compensation; and I agree faithfully to conform to
all the rules and regulations of the company in its
ordinary department as they are or may hereafter be
made. I also agree that my employment and duties as
agent of the ordinary department shall terminate
whenever I shall cease to be a superintendent of the
industrial department of the company, and that upon
such termination all my interests in commissions and
fees as ordinary agent shall cease, and that the
amount of money that I have received from the com-
pany in the ordinary department at the date of the
termination of my agency as aforesaid, shall be in full
payment and satisfaction of all my services, commis-
sions and fees as agent of the ordinary department.
W. E. Arensmeyer, Agt."

Subsequently plaintiff was transferred to Joliet, thence to Buffalo, N. Y., and thence, on October 1, 1899, to the district designated "St. Louis, North," whence he was transferred, February 2, 1903, again to Joliet, and there his connection with the company ceased, August 13, 1904.

The renewal commissions now involved are those accruing *after* August 13, 1904, on premium payments on policies issued after October 1, 1899, in the St. Louis, North, and Joliet districts, the petition alleging the payment to plaintiff of all others to which he was ever entitled.

In the manual issued by defendant March 1, 1892, for the use of its superintendents appeared the following provisions:

"Commissions.—The following commissions will be paid: On the first year's premiums, fifty per cent on ordinary life policies—life with return of premium policies—and expectation of life policies; forty per cent on life with increasing insurance policies—life policies with payments limited to fifteen and twenty years—and endowment policies for a term of fifteen years and over; fifty per cent on life policies with payments limited to ten years and endowment policies for a term of ten years; on renewal premiums (i. e., premiums after the first year) ten per cent on all forms of policies for a period not to exceed five years. After the fifth year's renewal premium is paid the agent's interest in and commission on the business ceases.

"Limitation on Commissions.—When, through his transfer or any other reason, a superintendent leaves the district in which he has procured business, or in the event of his retirement from the service of the company, or if the insured remove into a district outside of the city or place where such superintendent is employed, his commission in said business will thereupon cease and determine. But in whatever district a superintendent may be placed he will be entitled on

premiums collected and remitted by him on the business in such district, to all the first year's and renewal commissions to which his predecessor would have been entitled had he been continued in the district. On premiums collected on business written before January 1, 1888, the superintendent who makes such collections will be entitled to a fee of 2½ per cent."

The 1895 edition of the manual contained identical provisions as to limitations on commissions.

January 5, 1900, defendant sent to its superintendents, including plaintiff, a letter expressly revoking that part of the manual under the heading "Limitation on Commissions," and making somewhat different provision concerning that matter and in respect to commissions in the contingency of the transfer of policies from one district to another and of the transfer of superintendents from one district to another, but expressly providing "that in no event will the interest of a superintendent in the renewal commissions on policies, either written while in charge of the district, or acquired by reason of transfer, survive his position as a superintendent for the company. Whenever his superintendency ceases, whether through resignation, dismissal, or because of his accepting another position in the company, all his interest in the renewal commissions ceases and determines."

This letter plaintiff first testified he had no doubt he received in the regular course about January 5, 1900, but afterward he qualified this statement.

By general letter March 8, 1900, which plaintiff received, defendant, among other things, wrote: "3. We take this occasion to readjust the renewal commission schedule on a plan which will encourage you to keep the business persisent. While, by the new schedule, the total renewal commissions paid by us are greater than under the old schedule, they are more equitably distributed, and they furnish inducements

for careful placing of business and the keeping of it in force by superintendents.''

The new renewal schedule, beginning April 1, 1900, is as follows: ''On all policies thereafter written, except those on the twenty-payment life with forty per cent reduction and the endowment at age eighty plans, the renewal commission will be 7½ per cent for nine years. The renewal commission on the twenty-payment life with forty per cent reduction will remain ten per cent for four years and on the endowment at age eighty at 2½ per cent for five years, as heretofore.''

In the edition of the manual for 1901, for which plaintiff's receipt in writing was in evidence, section 111, under the heading ''Commissions,'' reads as follows:

''111. Your interest in renewal commissions ceases with your discontinuance as superintendent. If, however, you are transferred as superintendent, to another district, an adjustment of your renewal interest in the district you leave, and on the business in force in the district you assume, will be made. The terms of such adjustment will be communicated to you when such transfer takes place.''

Under date of January 17, 1903, defendant advised plaintiff it intended to transfer him to Joliet, giving its reasons therefor and saying to him his salary under his industrial contract would be unchanged and that he would retain an equitable interest in the ordinary business created by him in the St. Louis, North, district, and would acquire a reasonable interest in the renewals on the business in force in the Joliet district.

After the exchange of another letter or two, plaintiff wrote conceding his record for a year or so had not been all he had hoped and saying he ''accepted the situation as gracefully as any human being could under the same circumstances.'' In none of his letters

in this connection did plaintiff mention renewal commissions, question plaintiff's right to make the "equitable arrangement" it proposed or demand or request advice of the particulars of that arrangement prior to agreeing to accept a transfer to Joliet.

The transfer was recorded as of effect February 2, 1903, and plaintiff was advised of this but given a vacation until April 6, 1903. This leave of absence, it was agreed, was not to affect his right to renewal commissions during its continuance. Immediately after plaintiff took actual charge of the Joliet district, April 6, 1903, defendant wrote him stating the renewal commissions to which he would be entitled on business in force in the Joliet district on February 2, 1903, and also on business created by him in the St. Louis, North, district between October 1, 1899, and January 24, 1903. At the same time defendant enclosed for plaintiff's signature an agreement identical with that of January 16, 1893, and including a statement of all commissions allowed, whereby the renewal commission period was, on most policies, reduced from nine to seven years.

To this plaintiff replied stating the agreement was acceptable provided it was not intended to apply to business secured by him or his agents prior to February 2, 1903.

In answer defendant's superintendent of agencies wrote that the agreement was not intended to be retroactive but that since sending it plaintiff's *previous* acknowledgment of the receipt of the manual had been found and it was unnecessary for him "to complete the circular letter referred to" and asking its return.

In 1904 during the interchange of correspondence concerning plaintiff's retirement from defendant's service, he made no reference to any claim to renewal commissions after his retirement but commented upon the fact that he did not know what he would do unless the company would assist him in some way, and wrote

that he was "aware the executives have dealt most liberally with others and I know that I may safely commit my case to their generosity."

Ten days after his retirement he wrote defendant suggesting that he was not physically able to perform the duties of assistant superintendent, which position defendant had indicated it would give him, and saying he desired to locate in the suburbs and if defendant "would grant him a small pension" he could do this, having saved enough money to buy a home.

In reply defendant offered "as a mark of esteem" to make plaintiff an allowance of twenty-five dollars per week for one year on the understanding that "at the end of one year this allowance will cease and that we shall not feel called upon to make other provision for you."

In answer plaintiff wrote that after receiving the letter last mentioned he had consulted counsel and placed all the facts before them "and particularly clause 111 of the ordinary department manual," and on their advice he refused the allowance offered unless the annexed condition was qualified so it would not include renewal commissions, to which he asserted a claim and which he formally demanded. He had previously, without protest, accepted, in September, 1904, payment of renewal commissions for August, 1904, in the sum of ninety-two dollars, being such commissions as accrued between August 1 and August 13, 1904, when he left defendant's employment.

The right of defendant to dispense with plaintiff's services as superintendent at any time is conceded and no complaint of any kind is made because it did dispense with them.

The sole question on the merits is whether plaintiff is entitled to any renewal commissions on premium payments falling due and made after he retired from the company's service, August 13, 1904. The brief is principally devoted to this phase of the case. Com-

plaint is also made of the court's action in referring the cause.

I. Plaintiff expressly admits he executed the instrument dated January 16, 1893, whereby he accepted employment in the "ordinary department" of defendant company's service but contends that (1) under a proper construction of that contract, if in force, he is entitled to recover; and (2) that contract had been superseded by another under which he is entitled to judgment.

1. That there could be no recovery under the contract of January 16, 1893, is too plain for argument.

Contracts:
Construction:
Employment
as Insurance
Agent:
Renewal
Commissions.

By it plaintiff expressly agreed that the termination of his employment as superintendent in the industrial department should, *ipso facto*, terminate his employment as agent of the ordinary department, and that upon the termination of such agency all his interest in commissions and fees should cease, and that the moneys theretofore received as such agent should be "in full payment and satisfaction of all . . . services, commissions and fees as agent of the ordinary department." He pleads the termination, August 13, 1904, of his employment as district superintendent in the industrial department. That fact, under the contract of January 16, 1893, ended his right to renewal commissions which otherwise would have accrued after August 13, 1904, and in his petition plaintiff alleges that all renewal commissions which accrued prior to that date had been paid him.

A somewhat similar question arose in King v. Raleigh, 100 Mo. App. 1, and Judge GOODE, with the concurrence of Judges BLAND and BARCLAY, held, in an able opinion, that renewal commissions on premium payments made after the termination of the agency were not recoverable. Numerous cases are cited. The

contract in that case did admit of some doubt, as stated in the opinion, and, in that respect, was wholly unlike that in this case. There the conclusion was reached by construction. Here the language of the contract is clear and explicit.

The last paragraph of the opinion in Burleson v. Ins. Co., 86 Cal. 342, is squarely in point and in accord with our conclusion in this case. In citing this case in King v. Raleigh, the court probably had in mind a previous part of the opinion.

The principal cases cited as supporting a contrary view are Hercules Mut. L. A. Soc'y v. Brinker, 77 N. Y. 435; Heyn v. Ins. Co., 192 N. Y. 1; Insurance Co. v. Coleman, 118 Tenn. 215.

In none of these cases was there, as there is in this, a provision expressly terminating the agent's right to renewal commissions upon the termination of his employment with the company. In each of those cases the court deciding it reached the conclusion that the contract did not so provide. Here there is no room for construction—no ambiguity of any sort.

Under the contract of January 16, 1893, plaintiff had absolutely no right to any renewal commissions save those accruing prior to August 13, 1904, and these his petition alleges have been paid to him.

2. It is contended the letter of March 8, 1900, modified the contract of January 16, 1893, and that under the contract as modified by it plaintiff ought to have judgment. All that part of the letter by any possibility relevant in this connection is set out in the statement. There is nothing in this letter evincing any intent to supersede or abrogate that part of the contract of January 16, 1893, terminating renewal commissions upon the termination of plaintiff's superintendency. As held on an identical question in a similar case (Jacobson v. Ins. Co., 61 Minn. l. c. 333) the modification of premium rates by the letter of March 8, 1900, "must be construed with reference to all the.

terms of the contract, and the purpose for which such commissions were paid. The manifest intention was to make the right to a commission on renewal premiums dependent upon a continuation of plaintiff's services.''

In the contract of January 16, 1893, plaintiff expressly agreed to be bound by the ''Manual'' for superintendents ''both as to services and compensation,'' and also expressly agreed he would ''obey and abide by all the rules therein contained, and all the amendments thereof which may hereafter be made by you, including any and all changes and modifications thereof as to duties or as to compensation.''

By this stipulation plaintiff expressly authorized defendant to change renewal premium rates under the contract as to policies written after the change, at least, and defendant made no attempt to exercise that power as to any other. It would be novel if a change which plaintiff expressly contracted might be made respecting his compensation wiped out the contract itself and freed plaintiff of all his other contractual obligations to the company. The change was made pursuant to the contract and in furtherance of it and was accepted by plaintiff and acted upon without any suggestion from him that he thought it of other significance than its plain language indicates.

3. Another insistence is that when defendant, upon transferring plaintiff from St. Louis to Joliet, February 2, 1903, wrote him that he would retain an equitable interest in renewal premiums on business in the St. Louis district he was leaving and acquire a like interest in like premiums on business then in force in the Joliet district he was entering, and followed this by specifying the equitable interests he would so retain and acquire, plaintiff's right to the interests and commissions specified vested, and, therefore, he should recover.

This adjustment of plaintiff's rights in renewal commissions in his old and new districts was accepted by him without protest, and he, of course, does not in his pleadings or elsewhere question defendant's right to make it.

That adjustment has nothing in it tending to overthrow the contract of January 16, 1893, but was, of course, made in anticipation of plaintiff remaining in defendant's service. There was nothing connected with it indicating a modification of the contract provision that plaintiff's renewal commissions would cease upon the termination of his agency. The letters of January 17 and April 6, 1903, like that of March 8, 1902, and for like reasons, must be construed in connection with the whole contract, if they are to be construed as bearing any relation to the contract at all.

4. But it is also contended that the "equitable adjustment" referred to really constituted the consideration of a new contract superseding the old and under it plaintiff should have judgment. Reliance is placed upon Perry v. Casualty Co., 75 N. H. 199.

In that case the court said that the question for consideration by it was simply whether "there was any evidence" of a waiver by the company, under either of two contracts, of a provision terminating renewal commissions upon the termination of the agency.

In a letter in evidence in that case the company expressly waived the provision under the first contract on condition that the agent would execute the second contract and re-enter the company's service.

In this case there is no sort of showing that plaintiff conditioned his acceptance of a transfer upon anything the company might or might not do respecting renewal commissions. He did not know or even inquire, prior to taking charge at Joliet, what arrangement would be made. He does not plead any contract

to remove to Joliet in consideration of the adjustment made. This is an afterthought.

5. The submission to plaintiff by defendant for his signature, April 6, 1903, of a receipt for the manual of 1901, identical in form with the receipt and contract of January 16, 1893, and the correspondence relating thereto did not change the situation. Concurrently defendant proposed a change in the renewal commission period. Plaintiff's objection to signing simply meant he wished it understood the change should not be retroactive. There was no change submitted except in the reduction of the renewal commission period. In all other respects the provisions in the documents submitted for signature had been in full force and applied to all past business. There could be no *retroactive* effect ascribed to any of these provisions other than that with respect to the renewal commission period for it was the only one which indicated a change in the previous arrangement. It would be absurd to say plaintiff in objecting to giving to the proposal submitted a retroactive effect meant to object to a provision in it which was identical with an essential part of the only contract under which he had any right to renewal commissions and which part the company did not propose to change with respect to future business. His objection, of course, pertained to changes proposed, and defendant agreed with him that no retroactive effect was intended to be given the new arrangement.

Further, in the letter in which it was stated the proposal related solely to future business, defendant also wrote it had found plaintiff's previous receipt for the manual and added that plaintiff need not, therefore, sign that sent April 6, 1903. That receipt was the document under date of January 16, 1893, and was, as stated, identical in form with the receipt for the manual submitted in 1903 with the proposed change in the renewal commission period. It must be conclu-

sively presumed plaintiff knew what his contract with the defendant was and knew in what respects it resembled the one submitted. He therefore, knew defendant was relying upon the agreement of January 16, 1893, in connection with the modifications submitted as to new business and relying upon that document and former rates as to old business. He made no objection to the applicability of the contract of January 16, 1893, to either his previous or future business but knowing defendant considered it a constituent part of all arrangements with him, continued in its service without objection. There is nothing in this phase of the case which affects the applicability of the contract of January 16, 1893.

6. It is suggested the contract is a harsh one. It is the one plaintiff made. Defendant would seem to have been as anxious for plaintiff's success as was he. It was only through successful superintendents defendant could succeed. To secure business and keep it in force was defendant's purpose and to that end it employed plaintiff. The contract he signed when he accepted the employment was designed to spur him to the accomplishment of both objects. His success meant defendant's success in his district and, naturally, his retention in defendant's service. His failure would result in his discharge and open the way for the employment of a successor on terms which would arouse in him an interest in keeping the old business persistent. The contract was one the parties had a legal right to make and did make, and the courts cannot substitute another for it. [Stagg v. Ins. Co., 10 Wall. 1. c. 592, 593.]

*Lawful Contract: Power of Courts.*

II. It is insisted the court erred in referring the case. On the pleadings the issue as to the amount of the recovery would have involved an examination of defendant's books with reference to every policy between October 1, 1899, and January 27, 1903, and

*Reference: Nonprejudicial Error.*

a like examination as to policies written in the Joliet district between February 2, 1903, and August 13, 1904. As to premiums paid on such policies between August 13, 1904, and the date the suit was filed, January 12, 1905, the question would have been as to the renewal commissions on actual payments already made. With respect to the renewal commissions on premiums paid subsequent to January 12, 1905, the matter would perhaps have been one for expert testimony, as to the time from the date of the trial forward, at any rate. [Lewis v. Ins. Co., 61 Mo. l. c. 539.]

The propriety of the reference in this case in so far as it was based upon the necessity of examining long tabulations of renewal commissions upon premiums paid when suit was begun is affirmed by Hibbard v. Ins. Co., 4 Delehanty (Misc. Rep.), 422; which ruling was affirmed in 141 N. Y. 549.

So far as concerns renewal commissions on premiums falling due after the trial, if such alone had been involved, there is authority in this State against the right to refer over exception. [Thornton v. Ins. Co., 7 Mo. App. 544.]

In this case the court did appoint a referee, and the evidence was taken. The original contract, admittedly signed by plaintiff, is in evidence. The only modifications which plaintiff contends, or could contend, affected his relation to the company are in writing and in evidence. He put in his whole case before the referee and, in this court, grounds his right to a recovery upon written and printed documents. These, as appears from what has been said, demonstrate he has no cause of action.

What sense would there be in reversing this judgment, because the case was referred, and remanding the cause for trial by a jury, there being no cause for a jury to try?

Had the trial court merely refused to impanel a jury and, over plaintiff's objection, heard the case

itself, this court would not think of sending it back for the mere purpose of having the trial court impanel a jury which he would have to tell, when the evidence was in, that there was no case to try (Wolff v. Campbell, 110 Mo. l. c. 120, 121; Hite v. Railroad, 130 Mo. l. c. 141) and, therefore, never any actual reason for impaneling them at all.

The question of liability in this case depends upon the application of the law to a certain contract plaintiff admits he executed and certain documents upon which he founds his claim. These demonstrate he has no case. He was not prejudiced by the reference since the documents in evidence demonstrate he has no case which could be submitted to a jury or court for trial. The judgment is affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.