AMERICAN NATIONAL INSURANCE COMPANY, a Corporation, Appellant, v. E. J. KEITEL et al., Members of and Constituting the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, and PAUL FLOYD COONES.—No. 39178.—186 S. W. (2d) 447.

Division Two, March 5, 1945.

Rehearing Denied, April 2, 1945.

*Morrison, Nugent, Berger & Johns, Sonnenschein, Berkson, Lautmann, Levinson & Morse* and *James A. Potter* for appellant; *Edward R. Morrison* and *Henry S. Moser* of counsel.

*Edward D. Summers,* Acting Chief Counsel, for respondents; *George A. Rozier* of counsel.

1110

WESTHUES, C.—The controversy in this case is whether Paul F. Coones, an insurance agent of appellant company, is eligible for benefits under the Unemployment Compensation Law. The Unemployment Compensation Commission held he was entitled to benefits and the Insurance Company appealed to the Circuit Court of Cole County, Missouri, where the decision of the Commission was affirmed. An appeal was taken to this court. Our appellate jurisdiction of cases of this nature was determined in the case of Trianon Hotel Co. v. Keitel, 350 Mo. 1041, 169 S. W. (2d) 891.

Coones was employed by the Insurance Company as an industrial insurance agent and was assigned a territory, often referred to as a "debit", in Springfield, Missouri. He worked for the company from March 21 to September 21, 1941. One of his duties was to collect premiums due on policies in his territory or debit. He was also given authority, in fact it was his duty, to solicit new insurance and to collect the premiums thereon. He was paid on the following basis:

First: 15% of the amount collected in his territory each week.

Second: A percentage of the first year's premium on all ordinary policies written by him, the percentage to vary according to the kind of policy written or sold.

Third: Twenty times the amount of the increase if he, Coones, increased the amount of industrial insurance in his territory for the week over the previous week, that is, if the new business written by

him exceeded the lapsed policies. For example, if the collections in his debit amounted to $100.00 for a certain week, and the following week, due to his efforts, there was an increase in the debit of $1.00, then he received $20.00 for that increase.

Fourth: A year was divided into four quarters of thirteen weeks each. If Coones, by his work, increased the collections in his debit during any quarter, he received fifteen times such increase, payable in thirteen equal installments during the following quarter, if he so long remained in the employment of the company. For example, if he increased the debit collections during a quarter by $8.00, he was paid fifteen times eight, or $120.00, in thirteen equal installments the following thirteen weeks, provided he remained in the employment of the company during the entire time.

In the year 1941 the state legislature revised and amended the Unemployment Compensation Act. See Laws 1941, page 566. Certain occupations were excluded from the provisions of the act. These were enumerated and will be found listed beginning at page 580 of the 1941 Session Acts. At the top of page 582 will be found the provision which appellant contends excluded Coones from the act, while respondents contend to the contrary. The provision reads as follows:

"(M) Service performed by an individual for a person as an insurance agent or as an insurance solicitor, if all such service performed by such individual for such person is performed for remuneration solely by way of commissions."

Respondents did not expressly admit in their brief that the first three methods of computing Coones' compensation, as above outlined, were commissions, but made no point that they were not. The last or fourth provision for computing compensation is the one which respondents earnestly insist constitutes wages and not commissions. It is conceded that if an agent in the status of Coones is excluded from the provisions of the act then Coones is not entitled to benefits. He had not earned enough before the date the act became effective to entitle him to benefits.

Before the 1941 revision of the act by the Missouri Legislature, Congress, in the year 1939, adopted a provision in the exact language of the one above quoted. See 26 U. S. C. A., Internal Revenue Code, sec. 1607 (c) (14). The Federal Internal Revenue Department made a ruling to the effect that industrial insurance agents with contracts similar to that Coones had with his company do not come under the act. Respondents argue that such a ruling is not binding on this court. In fact it is urged that it is not even persuasive. Ordinarily that may be true. In the circumstances, however, it is important for several reasons. First of all the history of the law and the intent of Congress when it adopted the provision have a bearing on the intent the Missouri Legislature had when it adopted the provision verbatim from the Federal Act. It may be presumed that the legislature had

knowledge of the interpretation placed on that provision as expressed during the debates when before Congress for adoption. We will refer to these later in discussing opinions wherein will be found quotations of statements made by members of Congress. In the case of Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184, this court had the following to say concerning this law:

"Our unemployment compensation act is not circumscribed by the federal act, Murphy case, supra, 142 S. W. 2d loc. cit. 454, but the federal act is undoubtedly the background of practically all of the state unemployment compensation acts. See Northwestern Mut. Life Ins. Co. v. Tone et al., 125 Conn. 183, 4 A. 2d 640, loc. cit. 642, 121 A. L. R. 993. And the federal and state acts together constitute 'a cooperative legislative effort by state and national governments for carrying out a public purpose common to both, which neither could fully achieve without the cooperation of the other.' Carmichael et al. v. Southern Coal & Coke Co., 301 U. S. 495, loc. cit. 526, 57 S. Ct. 868, loc. cit. 880, 81 L. Ed. 1245, 109 A. L. R. 1327; Steward Machine Co. v. Davis, 301 U. S. 548, loc. cit. 587, 57 S. Ct. 883, 81 L. Ed. 1279, 109 A. L. R. 1293."

If, as this court in that case indicated, the federal and state governments must cooperate to fully achieve the common purpose of the law, then certainly that cooperation should extend to the courts when called upon to interpret the provisions of the law. We, therefore, do give weight to the interpretation of the law as made by the federal department. We need not place a strained construction upon either the law or the Coones contract of employment to hold that the entire remuneration Coones received under his contract constituted commissions. The word "commission", when used to denote compensation for work performed, as is ordinarily understood, means compensation paid upon results achieved. It especially applies to agents selling their masters' wares on a percentage basis. 15 C. J. S. 581. See also Words and Phrases, "commission." In Webster's New International Dictionary, 2 Ed., we find under "commission—8:" "The percentage or allowance made to a factor or agent for transacting business for another; as, to sell goods on commission." Respondents cited 11 C. J. S. 515, where the word "bonus" is defined. Coones' compensation under the fourth clause was referred to as a bonus in respondents' brief. A reading of the text, however, will disclose that the compensation received by Coones does not come within the definition or meaning of a bonus. Note at page 516 of 11 C. J. S., defining bonus, it is said:

". . . money, or other valuable, given in addition to an agreed compensation; payment made because of past services over and above what was contracted and compellable to be paid;"

The appellant company in this case had contracted to pay Coones the extra compensation under clause four if Coones performed his contract and sold the required amount of insurance. So it was not a bonus as that term or word is ordinarily understood, nor would it be correct to call it a bonus. Respondents in support of their contention cite Washington Nat. Ins. Co. v. Employment Security Commission, 144 Pac. (2d) (Ariz.) 688, and Home Beneficial Life Ins. Co. v. Unemployment Compensation Commission, 27 S. E. (2d) 159, 181 Va. 811. But those cases do not aid respondents' contention. In the Arizona case the court, holding that the agent's pay was not entirely commissions, said:

"As is pointed out in Greer v. Hunt County, Tex. Com. App., 249 S. W. 831, 832: 'The controlling element in determining whether the amount to be received is upon a commission or salary basis is whether that amount, by whatever name it may be called, is absolute and fixed regardless of what the lawful commissions may be, or is made contingent upon earning that amount as commissions.'

"Under this merit contract the men are advanced a minimum of $35 per week (formerly $25) against a reserve which is theoretically built up upon the basis of a very involved formula, . . . ''

In the case before us Coones was not given or promised a minimum pay. His entire compensation was based on the results achieved by his own efforts. The Arizona court based its conclusion in part at least on the fact that the agent received a minimum sum each week. That court also referred to and quoted from the debate in the United States Senate when the said amendment was before that body. The court italicized the following statement made by Senator Pat Harrison:

" 'The principal class of insurance salesmen which would be affected, is that class engaged in what is generally called industrial insurance.' "

In the Virginia case, as in the Arizona case, there was a guaranteed minimum weekly stipend. The case need not be further reviewed as that element distinguishes it from the case under consideration. However, we desire to call attention to the following quotation by the court, from the report of the United States Senate Committee on Finance, with reference to the law under discussion. The quotation will be found at page 164 of 27 S. E. (2d), and reads as follows:

" 'If any part of such remuneration is a fixed salary the agent or solicitor is covered and the tax is computed on the basis of his aggregate remuneration (for example, salary or salary plus commissions).' (Italics supplied.) "

As we view and read the Virginia and Arizona cases we feel secure in saying that had those courts been called upon to decide the question we now have before us they would have held that Coones was not entitled to benefits under the act. It may be presumed that when the

Missouri Legislature adopted the amendment in the exact language of the Federal Act that it intended the Missouri Law to harmonize with the Federal Act. It is clear, we think, that the comments made in the United States Senate, as above quoted, indicate that it was intended to exclude from the act industrial insurance agents working under contracts similar to that of Coones. We are of the opinion that whatever the compensation of Coones under the fourth clause of the contract may have been called, the amount of money he was to receive was calculated entirely upon the amount of insurance sold by him and therefore constituted commissions.

The fact that the pay was to stop in case Coones ceased to work for the company does not change the situation. Such a clause is often found in contracts of insurance agents selling entirely on commissions. Many such contracts provide a commission of a certain per cent of the first premium and a lesser per cent of the payments of future premiums. The contracts provide that these commissions on future premiums cease when the agents' services are terminated. Arensmeyer v. Metropolitan Life Ins. Co., 254 Mo. 363, 162 S. W. 261; Locher v. New York Life Ins. Co., 200 Mo. App. 659, 208 S. W. 862.

We are of the opinion that the act excludes insurance agents working under contracts such as Coones had with appellant company. The judgment of the circuit court is reversed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.