(No. 32663.—■■■)

COMMONWEALTH LIFE AND ACCIDENT INSURANCE COMPANY, Appellee, *vs.* BOARD OF REVIEW OF THE DEPARTMENT OF LABOR *et al.*, Appellants.

*Opinion filed March 23, 1953.*

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellants.

HENRY X. DIETCH, of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Max Cooper, one of the appellants in this cause, filed a claim on October 26, 1946, for unemployment benefits under the Unemployment Compensation Act. A deputy in the Department of Labor made a finding that he was not eligible to receive benefits because the services he had performed in the year 1945, for appellee, the Commonwealth Life and Accident Insurance Company, were excluded from the definition of "employment" by the provisions of section 2(f)(6)(M). (Ill. Rev. Stat 1945, chap. 48, par. 218.) The content of the section, the application of which is the crux of this proceeding, is as follows: "The term

'Employment' shall not include  *  *  *  Services performed by an individual as an insurance agent or insurance solicitor, if all such services performed by such individual are performed for remuneration solely by way of commission." It is appellee's contention, apparently adopted by the deputy, that the claimant was an insurance agent and was remunerated solely by way of commission, and thus excluded from the provisions of the act.

Claimant appealed from the deputy's finding to the referee of the Department, contending that appellee had. paid him a guaranteed salary in 1945 and that consequently he was not remunerated for his services solely by way of commissions. A hearing was held before the referee, following which, the decision of the deputy was set aside on the ground that the services claimant performed for appellee were not exempted by section 2(f)(6)(M) and, consequently, were "insured work." Appellee then appealed to the Board of Review, which body, after further hearing, affirmed the decision of the referee. Following this, appellee instituted administrative review proceedings in the superior court of Cook County, with the result that the court entered an order reversing the decision of the Board of Review. The Director of the Department of Labor, the Board of Review, and the claimant have prosecuted the appeal to this court. The issues raised here resolve themselves into two inquiries: First, were claimant's services performed as an insurance agent or solicitor, and, second, if so, were all of such services performed for remuneration solely by way of commission?

The facts relating to these issues show that claimant was hired by appellee's office manager, Frank H. Clark, after responding to a newspaper advertisement. Since appellee was in the process of establishing itself in the Chicago area, it had a policy which permitted its agents to draw against future commissions as a part of a plan to enable them to earn a fair living while building up their debits, a

debit being a list of insurance premiums in force in a particular area ·which the agent was charged with collecting. If an agent made an excellent record, the amount of his draw was increased, whereas, if the draw consistently exceeded the agent's earnings, it was either decreased or his services were dispensed with. In the latter case, appellee made no attempt to collect the overdraft but merely took the loss. The weekly draw or advance was charged by the appellee against a reserve built up on the basis of a computation of twenty times the net increase in an agent's insurance sales.

When claimant was employed he was given a debit to collect, upon which he would receive 20 per cent commission, and, in addition, was expected to build up his debit by selling new insurance upon which he would receive the regular commission for net increase. Clark guaranteed claimant minimum earnings of $45 a week, in the form of a draw or advance on future commissions for new business, and the record leaves little doubt that claimant was to receive his weekly draw, in addition to his commissions on collections from his debit, whether he sold any new insurance in a particular week or not. As a practical matter, however, if any agent got too far overdrawn, his 'services were dispensed with.

On the day claimant was hired he signed a one-year contract with appellee which set forth the commissions the company would pay him both for new business and collections. It further provided that the company "may, in its sole discretion, advance to the Agent against commissions earned by him, or partially earned by him, an account up to but not exceeding . . . . . . . . dollars per week, the amount of such advance to be left solely in the discretion of the company." In this case it was the office manager, Clark, who fixed the amount of claimant's weekly advance. The amount fixed was not inserted in the space provided in the contract with claimant because, as Clark explained, the

amount would be varied according to an agent's ability and would be raised or lowered as the occasion demanded. The contract mentioned nothing of claimant's liability for overdrafts caused by advances in the event he left the company's employ.

Claimant worked for appellee from December 13, 1944, to January 7, 1946, having signed a new contract at the conclusion of his first year's service. He devoted his entire time to the work and reported to appellee's office each morning, Monday through Friday. His collections from his debit for the year 1945, averaged about $150 a week and for the same period his pay averaged $75 a week. Some weeks he earned the $45 advance and in others he did not. It took him a number of weeks before he earned the $45 advance and by that time he was considerably overdrawn. When claimant left appellee's employ, apparently at its request, he was several hundred dollars overdrawn but the company did nothing to try to collect, a policy that was normally followed.

Before determining whether claimant comes within the exclusionary provisions of section 2(f)(6)(M), it should be reasserted that the Unemployment Compensation Act is an exertion of the police power of the State, remedial in nature, and has as its purpose the alleviation of the evils flowing from widespread unemployment and the provision of benefits to those workers coming within the act, as at least a partial reimbursement for loss of income during periods of unemployment. (*Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258; *Oak Woods Cemetery Assn.* v. *Murphy,* 383 Ill. 301.) Generally speaking, statutes of this character, enacted in the interest of the public welfare, are to be liberally construed to the end that their basic purpose may be achieved. Specifically, we have held that the Unemployment Compensation Act is remedial legislation which should be liberally construed to the end that the benefits intended under its provisions are received by employees.

(*Zelney* v. *Murphy,* 387 Ill. 492; *Lindley* v. *Murphy,* 387 Ill. 506.) Another well-established rule in this jurisdiction is that exemptions from the application of the act are to be strictly construed against the party asserting the exemption and the burden is on such party to prove that it is exempt under the exclusionary provisions. *American Medical Assn.* v. *Board of Review,* 392 Ill. 614; *Crouch* v. *Murphy,* 390 Ill. 112; *Grant Contracting Co.* v. *Murphy,* 387 Ill. 137.

Although there seems to have been little controversy over the question in the proceedings below, appellants make the contention that the claimant was not an "insurance agent" or an "insurance solicitor" within the meaning of the controverted section and, thus, not exempt. They argue that the legislature, by the terms employed, intended to remove from coverage only those agents or solicitors who sold new insurance exclusively and who had no territory or debit, were not engaged in the collection of premiums, received no advances and were compensated solely on a commission basis. This, in effect, is the holding in *Capital Life & Health Ins. Co.* v. *Bowers,* 186 Fed. 2d. 943, wherein the court interpreted a provision of the Federal Unemployment Tax Act, (26 U.S.C.A. sec. 1607(c)(14),) identical with the Illinois provision. We do not impute such a narrow construction to the Illinois provision for several reasons.

The exclusionary provision was incorporated into the Federal Unemployment Tax Act by an amendment passed by Congress in 1940. Subsequently, Illinois and thirty-eight other States adopted identical or similar provisions in their own Unemployment Compensation acts. The history of the Federal legislation, which is fully discussed in *Washington National Ins. Co.* v. *Employment Security Com.* 61 Ariz. 112, 144 Pac. 2d 688, and *Home Beneficial Life Ins. Co.* v. *Unemployment Compensation Com.* 181 Va. 811, 27 S.E. 2d 159, shows that the exclusionary provision was enacted because of disagreements among courts as to the

coverage of industrial insurance agents who collect premiums, as well as life insurance agents paid solely by commission. In explaining the purpose of the amendment, the chairman of the congressional committee stated: "* * * Several States have exempted insurance salesmen from coverage, and your committee believes that it would be wise to exclude from the Federal unemployment-compensation tax insurance salesmen whose sole pay is by way of commission. This would, of course, still leave the States free to cover this employment when they choose to do so, but it would eliminate the present situation, where the entire Federal tax, without any offset for State unemployment contributions, comes to the Federal Government where the State exempts this employment. The principal class of insurance salesmen which would be affected is that class engaged in what is generally called industrial insurance." The Arizona and Virginia courts, in the cases cited above, as well as the court in *American National Ins. Co.* v. *Keitel,* 353 Mo. 1107, 186 S.W. 2d 447, concluded from this comment that the avowed purpose of the Federal amendment was to exclude from the act the service of industrial salesman or agents, provided they are remunerated solely by way of commission, and that the State amendments, being couched in identical language, had the same purpose.

We find ourselves in accord with the conclusion reached in these cases. While our Unemployment Compensation Act is not circumscribed by the Federal act, weight should be given to the interpretation of identical provisions as made by the Federal department, for the Federal act is undoubtedly the background of all the State Unemployment Compensation Acts. (See: *Northwestern Mut. Life Ins. Co.* v. *Tone,* 125 Conn. 183, 4 Atl. 2d 640; *American National Ins. Co.* v. *Keitel,* 353 Mo. 1107, 186 S.W. 2d 447, 121 A.L.R. 993.) The Federal and State acts together constitute a co-operative legislative effort by State

and national governments to carry out a public purpose common to both, which neither could fully achieve without the co-operation of the other. *Carmichael* v. *Southern Coal & Coke Co.* 301 U.S. 495, 81 L. ed. 1245.

In addition, this court has stated that the Unemployment Compensation Act deals with the realities of economic life and that it is with these same realities that we are concerned in determining questions which arise in the course of its administration. (*Parks Cab Co.* v. *Annunzio,* 412 Ill. 549.) Even though the claimant in this case was an industrial agent, his duties clearly demonstrate that he was in common and everyday parlance an "insurance agent." (See: *American National Ins. Co.* v. *Denke,* 128 Tex. 229, 95 S.W. 2d 370.) The services performed by claimant for appellee were those of an "insurance agent," as that term is understood, whether he was selling insurance or collecting premiums for insurance. In view of this very real conception of an "insurance agent" and in view of the overall considerations which prompted the legislature to adopt the exclusionary provision relating to insurance agents and solicitors, we conclude that it was not the legislative intent to remove from the coverage of the act only those agents whose exclusive duties were to sell new insurance for commissions. As one court points out, such an attempt to differentiate between employees of industrial insurance companies and insurance companies doing a general life insurance business could well be said to violate the due-process clause of both the State and Federal constitutions. (*Florida Industrial Com.* v. *Peninsular Life Ins. Co.* 152 Fla. 55, 10 So. 2d 793.) We conclude that the claimant's services here were those of an insurance agent within the meaning of the exclusionary provision. It does not follow, however, that such a result relieves appellee from the provisions of the act, for, in addition to the requirement that services be performed as an insurance agent, the exempting

provision further requires that such services must be performed for remuneration "solely by way of commission."

Appellants contend that claimant was not remunerated solely by way of commission because he received a guaranteed minimum weekly stipend, the amount of which was fixed and unvarying, and bore no relation to the commissions earned for the week. Appellee, on the other hand, insists that under the terms of the employment contract in the present case, the remuneration varies with the agent's efforts, hence, his remuneration is solely by way of commission. It is our belief that the latter contention overlooks entirely the factor that the weekly amount claimant received in this case in no way depended upon his efforts for that week. On the contrary, it was a fixed amount that was paid periodically without being contingent on the results produced during the period.

The determination of whether such weekly payments, advances or draws, as they have been characterized in this record, constitutes a payment of salary or commission, within the meaning of the exclusionary provision of the act, appears to be one of first impression in this jurisdiction. We are not, however, without helpful precedent, for under statutory provisions almost identical to ours and under factual situations comparable to the present case, it was held in *Washington National Ins. Co. v. Employment Security Com*, 61 Ariz. 112, 144 Pac. 2d 688, and *Home Beneficial Life Ins. Co.* v. *Unemployment Compensation Com*. 181 Va. 811, 27 S.E. 2d 159, that the payment of fixed, unvarying sums each week, without respect to the amount of insurance sold in that week, does not constitute payment by way of commissions, within the meaning of the statute, but constitutes wages paid in the week it is received. The rationale of these cases is that courts need not be bound by the terminology applied to the weekly stipend by the parties, but must look beyond it to the actual

relationship of the parties; the controlling element in determining whether the amount received is upon a commission or salary basis being whether that amount, by whatever name it may be called, is absolute and fixed regardless of what the lawful commissions may be, or is made contingent upon earning that amount as commissions. Appellee insists that the result in the *Home Beneficial Life case* has been altered by the decision in *Unemployment Compensation Com.* v. *Union Life Ins. Co.* 184 Va. 54, 34 S.E. 2d 385, but we do not find this to be true, for in the latter case the company did not pay the agent a minimum weekly stipend and the court distinguished the *Home Beneficial Life case* on that ground. The case of *American National Ins. Co.* v. *Keitel,* 353 Mo. 1107, 186 S.W. 2d 447, on which appellee relies, is distinguishable for the same reason.

This court, too, is committed to the doctrine that we shall disregard the designations applied by the parties and determine their true relationship from all the actual facts in evidence. (*Murphy* v. *Daumit,* 387 Ill. 406; *Parks Cab Co.* v. *Annunzio,* 412 Ill. 549.) It is true that the parties designated the weekly stipend paid to claimant as an advance against commissions and that the company charged the weekly advance against a reserve built up on the basis of a computation of twenty times the net increase in claimant's insurance sales, but the fact remains that claimant was paid this amount each week regardless of what he had earned by way of commissions. It was a fixed and periodical payment in no way dependent upon commissions earned within the period. . The word "commission" is defined as the recompense or reward of an agent, factor, broker or bailee, when the same is calculated as a percentage on the amount of his transactions or on the profit to the principal. (Black's Law Dictionary, 3d ed. p. 361.) In its ordinary meaning, "commission" denotes compensation paid for work measured by results achieved. (*American National Ins. Co.* v. *Keitel,* 353 Mo. 1107, 186 S.W.

2d 447.) "Salary," on the other hand, is defined as a fixed annual or periodical payment, depending upon time and not amount of services 'rendered. (*In re Sanitary District Attorneys*, 351 Ill. 206.) Can it be said then that claimant's remuneration was solely by way of commission? We think not. In *American Medical Assn. v. Board of Review*, 392 Ill. 614, we held that the word "sole" is synonymous with the word "exclusive" and that the word "exclusive" appearing in section 2(f)(1)(6) of the act should be given its literal meaning. Looking to the actual relation of the parties as it existed, we cannot say that claimant's services were remunerated solely and exclusively by commission, for he received a fixed and periodic payment regardless of the commissions he earned. The amount he received weekly as a draw or advance was not contingent upon earning that amount in commissions.

In *Nelson v. American Business Bureau*, 241 Ill. App. 432, and in *Felsenthal Brothers & Co. v. Gradwohl*, 217 Ill. App. 170, it was held that in the absence of an express provision in a contract of employment covering sales to be made on a commission basis obligating the employee to pay back advances made in anticipation of commissions earned, or of words showing such employee assumes personal liability to repay the same, such advances are not deemed loans, and the employee does not become personally liable to repay them even though he fails to earn the expected commission. In the present case the contract with appellee contains no express promise by claimant to repay overdraws or excess advances and the evidence was that it was appellee's policy to assume losses thus sustained without an effort at collection. This lack of a fixed, personal liability on the part of the claimant to repay is characterized in the *Washington National Life case* as still another fatal defect to the contention that one receiving fixed weekly advances is being remunerated solely by way of commission. We believe it quite apparent that there are many

factors, besides strictly commission, that enter into the pay of an agent thus employed.

We conclude that the payment of fixed, unvarying sums to claimant each week for the year 1945, without respect to the amount of insurance sold in each particular week, does not constitute payment solely by way of commission within the meaning of section 2(f)(6)(M) of the Unemployment Compensation Act, particularly where the amounts so paid were merely chargeable against possible earnings of the claimant and created no personal liability to repay. The superior court of Cook County was in error in holding to the contrary. Its judgment is therefore reversed and the cause remanded with directions to enter a judgment affirming the decision of the Board of Review.

*Reversed and remanded, with directions.*