The Honorable Walter H. Mueller, Jr. Senator, District 15 State Capitol Building, Room 330 Jefferson City, Missouri 65101
Dear Senator Mueller:
This opinion is in response to your questions asking:
 A. In procuring architectural and engineering services, may a public agency consider proposed price or cost of the services in determining which firms are the most highly qualified to provide the services under R.S.Mo. §§ 8.285-8.291?
 B. At what point in the selection process may price or cost be considered by a public agency in procuring architectural and engineering services under R.S.Mo. §§ 8.285-8.291?
Sections 8.285 to 8.291, RSMo 1986, provide:
 8.285. Policy on contracts for architectural, engineering, land surveying services. — It shall be the policy of the state of Missouri and political subdivisions of the state of Missouri to negotiate contracts for architectural, engineering and land surveying services on the basis of demonstrated competence and qualifications for the type of services required and at fair and reasonable prices.
 8.287. Definitions. — As used in sections 8.285 to 8.291 unless the context specifically requires otherwise:
 (1) "Agency" means each agency of the state and each agency of a political subdivision thereof authorized to contract for architectural, engineering and land surveying services;
 (2) "Architectural services" means any service as defined in section 327.091, RSMo;
 (3) "Engineering services" means any service as defined in section 327.091, RSMo;
 (4) "Firm" means any individual, firm, partnership, corporation, association or other legal entity permitted by law to practice the profession of architecture, engineering or land surveying and provide said services;
 (5) "Land surveying services" means any service as defined in section 327.272, RSMo;
 (6) "Project" means any capital improvement project or any study, plan, survey or program activity of a state agency or political subdivision thereof, including development of new or existing programs.
 8.289. Agencies using services to be furnished statement of firm's qualifications and performance data. — Present provisions of law notwithstanding, in the procurement of architectural, engineering or land surveying services, each agency which utilizes architectural, engineering or land surveying services shall encourage firms engaged in the lawful practice of their professions to annually submit a statement of qualifications and performance data to the agency. Whenever a project requiring architectural, engineering or land surveying services is proposed for an agency of the state or political subdivision thereof, the agency shall evaluate current statements of qualifications and performance data of firms on file together with those that may be submitted by other firms regarding the proposed project. In evaluating the qualifications of each firm the agency shall use the following criteria:
 (1) The specialized experience and technical competence of the firm with respect to the type of services required;
 (2) The capacity and capability of the firm to perform the work in question, including specialized services, within the time limitations fixed for the completion of the project;
 (3) The past record of performance of the firm with respect to such factors as control of costs, quality of work, and ability to meet schedules;
 (4) The firm's proximity to and familiarity with the area in which the project is located.
 8.291. Negotiation for contract — not applicable, for certain political subdivisions. — 1. The agency shall list three highly qualified firms. The agency shall then select the firm considered best qualified and capable of performing the desired work and negotiate a contract for the project with the firm selected.
 2. For a basis for negotiations the agency shall prepare a written description of the scope of the proposed services.
 3. If the agency is unable to negotiate a satisfactory contract with the firm selected, negotiations with that firm shall be terminated. The agency shall then undertake negotiations with another of the qualified firms selected. If there is a failing of accord with the second firm, negotiations with such firm shall be terminated. The agency shall then undertake negotiations with the third qualified firm.
 4. If the agency is unable to negotiate a contract with any of the selected firms, the agency shall reevaluate the necessary architectural, engineering or land surveying services, including the scope and reasonable fee requirements, again compile a list of qualified firms and proceed in accordance with the provisions of sections 8.285 to 8.291.
 5. The provisions of section 8.285 to 8.291 shall not apply to any political subdivision which adopts a formal procedure for the procurement of architectural, engineering and land surveying services.
Sections 8.285 to 8.291, RSMo 1986, were enacted by Senate Committee Substitute for House Bill No. 322, 82nd General Assembly, First Regular Session (1983), and are largely based on the "Brooks Architect-Engineers Act" or "Brooks Act," Public Law92-582, (1972), codified at 40 U.S.C.A. §§ 541-544. The Legislative History of P.L. 92-582 states:
 Generally, however, it is expected that the agency head, through discussions with an appropriate number of the firms interested in the project, will obtain sufficient knowledge as to the varying architectural and engineering techniques that, together with the information on file with the agency, will make it possible for him to make a meaningful ranking. Under no circumstances should the criteria developed by an agency head relating to the ranking of architects and engineers on the basis of their professional qualifications include or relate to the fee to be paid to the firm, either directly or indirectly.
1972 U.S. Code Cong. and Admin. News, p. 4774. The Legislative History further states:
 The system favors selection of the most skilled and responsible members of these professions. . . .
 This system protects the interests of the taxpayers. Having won the competition on the basis of capability, the winning A/E [architect/engineer] must then negotiate his fee. . . .
Id. at p. 4769.
When Missouri adopts a federal statute, the intent of Congress has a bearing on the intent of the Missouri legislature. American Nat. Ins. Co. v. Keitel, 353 Mo. 1107,186 S.W.2d 447, 448 (1945). "It may be presumed that the legislature had knowledge of the interpretation placed on that provision as expressed during the debates when before Congress for adoption." Id. See also Mid-Continent Aerial Sprayers,Inc. v. Industrial Commission, 420 S.W.2d 354, 360 (Mo.App. 1967). It must be presumed that the Missouri General Assembly had knowledge of the interpretation of the "Brooks Act" at the time Sections 8.285 to 8.291, RSMo 1986, were adopted. This presumption leads to the conclusion that proposed price or cost is not to be considered in determining which firms are the most highly qualified.
The primary rule of statutory construction is to ascertain the intent of the legislature, considering the words in their plain and ordinary meaning. Union Electric Company v. Directorof Revenue, 799 S.W.2d 78 (Mo. banc 1990). Section 8.289, RSMo 1986, sets out four criteria to be considered by an agency in evaluating the qualifications of firms: (1) experience and technical competence; (2) capacity and capability to perform the work in question; (3) the firm's past record of performance, and (4) the firm's proximity to and familiarity with the area where the project will be located. Proposed price or cost is not listed as a factor for consideration. As a general rule, the express mention of one thing implies the exclusion of another.Harrison v. MFA Mutual Insurance Co., 607 S.W.2d 137, 146 (Mo. banc 1980). Where special powers are expressly conferred or special methods are expressly prescribed for the exercise of power, other powers and procedures are excluded. Brown v.Morris, 290 S.W.2d 160, 166 (Mo. banc 1956). Listing the specific criteria to be considered in evaluating the qualifications of firms and not including in such list the proposed price or cost further leads to the conclusion the proposed price or cost is not to be considered in determining which firms are the most highly qualified.
Section 8.291, RSMo 1986, provides that the agency shall negotiate a satisfactory contract — including fee requirements — after the agency has selected the firm best qualified to perform the work. If negotiations are not successful, the agency should then negotiate with the second qualified firm and, if those negotiations are unsuccessful, then the third qualified firm. Based on Section 8.291, RSMo 1986, the proposed price or cost is considered at the time of negotiation of the contract.
CONCLUSION
It is the opinion of this office that the proposed price or cost of services is not to be considered in determining pursuant to Section 8.289, RSMo 1986, which architectural or engineering firms are the most highly qualified, but proposed price or cost is considered at the time of negotiation of the contract pursuant to Section 8.291, RSMo 1986.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General