CHESTER C. FOSGATE CO. v. UNITED STATES.

UNITED STATES v. CHESTER C. FOSGATE CO.

Nos. 10096, 10178.

Circuit Court of Appeals, Fifth Circuit.

Feb. 6, 1942.

Rehearing Denied March 7, 1942.

John S. Lavin, of Orlando, Fla., for Chester C. Fosgate Co.

Arthur L. Jacobs, J. Louis Monarch, and Sewall Key, Sp. Assts. to the Atty. Gen., and Samuel O. Clark, Jr., Asst. Atty. Gen., Herbert S. Phillips, U. S. Atty., of Tampa, Fla., Harry G. Taylor, Sp. Asst. to the U. S. Atty., of Miami, Fla., and Wm. A. Paisley, Asst. U. S. Atty., of Jacksonville, Fla., for the United States.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

The question presented by this appeal and cross-appeal is whether certain services of the employees of the Chester C. Fosgate Company were, as the law stood in 1937, excepted from the basis for Social Security taxes for that year as being "agricultural labor."

The Company had a processing and packing plant in Florida for citrus fruits, in which it had invested over a quarter of a million · dollars, and through which it handled and marketed over a half million boxes of fruit per year. It had some groves of its own and leased other groves which it cultivated, processing and packing the fruit which it thus produced; but about eighty per cent of the fruit it handled in its packing house it bought after maturity from other producers, paying cash as it gathered the fruit, and then processing, packing and marketing it along with its other fruit. The Company also did work of cultivation during the growing season for other producers, for which it charged agreed prices, entirely independently of any contract to buy the fruit. Fruit was never bought until it was ready to gather.

The cultivation of oranges and other citrus fruits consists not only of plowing the ground and fertilizing and planting cover crops, but also of spraying and dusting to suppress insect and fungous pests, and irrigating, which require considerable equipment and skill, so that grove owners frequently contract with persons or companies who are equipped to do this work. The gathering also requires equipment not used in cultivation, and skill and care. The fruit in general must be processed to make it acceptable in the market, and this involves washing with soap, rinsing the soap off, and keeping the fruit at a high uniform temperature in air saturated with moisture for several days, exposed to a gas which removes the green color from the peel and hastens its full orange hue. Some oranges are dyed to produce the desired color, and each marked "Color added." There are also chemical treatments to prevent decay. The fruit is sorted for size and quality, and finally packed in boxes and shipped away to market. This is all done in the packing houses by machin-

·ery in a practically continuous process. Few grove owners attempt it now, and as a general rule those who do not operate a packing house sell the mature fruit on the trees, and the purchasing packing house gathers, processes and markets it.

No question arises about the exemption from tax of labor the Fosgate Company used in producing and gathering its fruit from the groves owned or leased by it. It was, however, required to pay tax with respect to the labor expended in cultivating under contract the groves of others, and in gathering, processing, and packing the fruit bought after maturity from others. On a suit to recover these taxes, the district court held that the labor of cultivating the crops of others under contracts was agricultural labor and exempt; but that the Company's business of processing, packing and marketing fruit produced by and bought from others was its principal business, and was a commercial rather than an agricultural enterprise; that the gathering such purchased fruit and delivering it to the packing house was incidental to this business, and none of the labor touching the purchased fruit was agricultural labor in the meaning of the then law. Judgment was given accordingly. The Company appeals from the latter holding and judgment; the United States from the former.

■ The Company asserts that the amendment of the Social Security Act of Aug. 10, 1939, states the meaning of "agricultural labor" which should here be applied, it being a mere clarification of the original Act, citing United States v. Turner Turpentine Co., 5 Cir., 111 F.2d 400. We think otherwise. The cited case involved only the question whether labor in producing turpentine gum from pine trees was in 1937 agricultural labor. It was held so to be, much weight being given to the general understanding in the States in which such work was carried on. The amendment of 1939 was said to be interpretative and explanatory of the original Act, but the statement must be limited to the matter before the Court. A careful examination of the legislation and its history leads us to say that so far as it relates to the present case it was expressly intended to change existing law from a date fixed in the future, and was not declaratory of the old law and operative retroactively. The orginal Social Security Act of 1935, § 907(c) (1), 49 Stat. 643, 42 U.S.C.A. § 1107(c) (1), excepted from the basis of taxation wages for "agricultural labor." The very next Section § 908, 42 U.S.C.A. § 1108, authorized the making of administrative regulations. Regulation 90 was promulgated, and Article 206(1), quoted in the margin,[1] undertook to give a practical, workable interpretation of what was to be treated as "agricultural labor." Subdivision (a) declared services performed by an employee, *on a farm*, in cultivating the soil or harvesting the crop were included; and subdivision (b) also included processing, packing and marketing the things raised, if performed by an employee of the producing owner or tenant of the farm, and if done *as an incident* to the farming operations as distinguished from manufacturing or commercial operations. This interpretation is not so broad perhaps as the dictionary might have permitted, but it dealt practically and reasonably with some of the borderline questions such as arose in this case. The Regulation stood until Jan. 1, 1940, and we suppose was enforced. On Feb. 10, 1939, Congress enacted into law the Internal Revenue Code, including therein as Section 1607, 26 U.S.C.A. Int.Rev.Code, § 1607, without change, Section 907 of the Social Security Act; 53 Stat. p. 1. The same

---

[1] Art. 206(1) *Agricultural labor.*—The term "agricultural labor" includes all services performed—

(a) By an employee, on a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of live stock, bees, and poultry; or

(b) By an employee in connection with the processing of articles from materials which were produced on a farm; also the *packing*, packaging, transportation, or marketing of those materials or articles. Such services do not constitute "agricultural labor," however, unless they are performed by an *employee* of the owner or tenant of the farm on which the materials in their raw or natural state were produced, and unless such processing, packing, packaging, transportation, or marketing is carried on as an incident to *ordinary farming operations as distinguished from manufacturing or commercial operations.*

As used herein the term "farm" embraces the farm in the ordinarily accepted sense, and includes stock, dairy, poultry, fruit, and truck farms, plantations, ranches, ranges and orchards.

Forestry and lumbering are not included within the exception.

Congress on Aug. 10, 1939, after elaborate consideration, made extensive amendments of the Social Security Act, including Section 1607 of the Internal Revenue Code. This whole Act is entitled one *to amend,* not to declare and explain the law. Section 614, 53 Stat. 1392, which deals specially with the matter before us, begins: *"Effective January 1, 1940,* section 1607 of the Internal Revenue Code *is amended* to read as follows". Subsection (*l*) then inserted makes the elaborate statement of what is and what is not agricultural labor which we are now asked to apply retroactively. Congress itself said it was not to apply until January 1, 1940. The report of the Committee of the House which handled the bill, and that of the Senate, both speak of the "old law", stating it as Regulation 90 stated it, with evident recognition of the validity of the regulation, and state *the changes* that were intended; and the Conference Report emphasizes that the changes were to take effect only at a future date, so as not to affect pending litigation.[2] We think the amendment of 1939 cannot be used to guide us; that the simple words "agricultural labor" must stand as the sole statutory language; and that we should not overturn the interpretation of them in Regulation 90, Art. 206, by which we suppose taxpayers generally have settled their taxes. The Regulation is now dead, and to overturn it for the years prior to 1940, contrary to the will of Congress, would create unjust differences between employers who paid and those who did not.

We approve the district court's conclusion that the services which Fosgate Company rendered in cultivating crops of fruit for others were rendered on a farm in connection with the cultivation of the soil, and were under Art. 206(a) agricultural labor, although the owner of the crops did not directly hire the laborers, but dealt with the Company, which in turn put the laborers to work. The labor was done in cultivating the soil, the literal etymological meaning of agriculture. The Company was entitled to recover back the taxes assessed with reference to these wages.

Service in gathering crops and transporting them to market would ordinarily be in connection with harvesting and agricultural, because usually performed by or for the person who produces them.

But touching crops that have to be processed before marketing, in recent years businesses have arisen that are more nearly mercantile and manufacturing than agricultural. Such businesses have increasingly tended to buy crops in the field or on the trees, thus cutting short the agricultural operations and transferring the harvest to the new business field. This is the rule in the citrus fruit business. This record states that Fosgate Company buys no fruit which it does not itself gather. The Regulation, Art. 206(b), seeks to deal with such situations, and to declare that persons employed not by the producer of crops, but by a processor who has bought them after maturity, is rendering services "in connection with processing", rather than in connection with the cultivation of the soil, and his labor is not fairly agricultural. It does not mention expressly "gathering", but where the processing purchaser prefers to buy on the trees and do the gathering for himself, perhaps thinking he can do it better, and know the fruit is not bruised or scratched, we think it reasonable to hold, as the district court did, that the labor actually done in such gathering is closer to the mercantile enterprise of processing and marketing than it is to agriculture.

Judgment affirmed.

---

[2] H.Rep. No. 728, 76 Cong. 1st Session p. 2, 18. S.Rep. No. 793, 76 Cong. 1st Session, p. 2, 19. H.Conference Rep. No. 1461. 76 Cong. 1st Session p. 20.