Whitaker, Judge,
delivered the opinion of the court:
Plaintiff is the owner of quite a large acreage.of farm lands in Illinois and Missouri. He sues to recover taxes assessed against him and some of his employees and collected from him under the provisions of Titles VIII and IX of the Social Security Act, approved August 14, 1935 (49 Stat. 620), and under the Social Security Act Amendments of 1939, approved August 10, 1939 (53 Stat. 1360). He alleges that the employees with respect to whose wages the taxes were assessed <did not come within the terms of the Act because they were “agricultural labor.”
Section 801 of Title VIII of the Social Security Act levies a tax on the income received by certain employees “with respect to employment (as defined in section 811),” and section 802 makes the employer liable for the collection and payment of the tax. Under section 804 of the Act a tax equal to the amount levied on the employee is levied on the employer also “with respect to employment (as defined in section 811).” Section 811 defines “employment” as “any service, of whatever nature, performed within the United States by an employee for his employer, except — (1) Agricultural labor * * *.”
Section 901 of Title IX of the Act levies an additional tax on the employer “with respect to employment (as defined in section 907).” Section 907 defines “employment” exactly ■as it is defined in section 811.
The question, therefore, is whether or not plaintiff’s employees, with respect to whose wages the taxes were levied, were “agricultural labor.” Certain so-called casual employees and certain subagents are the employees in question. The defendant admits that the casual employees were “agri *336 cultural labor,” but the parties differ as to whether or riot the subagents come within this classification.
Plaintiff owned some 45,000 acres of land in Illinois, and approximately the same amount in Missouri. Some of these lands plaintiff operated himself; principally those in Missouri, and the others he rented, some for a cash rental and some on shares. He employed two head agents by the names of Trapp and Ryan to look after his farms. Working under Trapp and Ryan were six subagents. The duties of these subagents are set out in detail in the findings. Summarized, they consisted of directing and supervising proper crop rotation, making tests and experiments to determine the best crops to be grown on particular lands, the proper fertilizer to be used, the best seeds to be sowed, of suggesting means for the control and destruction of weeds and pests, of the prevention of soil erosion, of purchasing seed, fertilizer and equipment for the tenants, of assisting them in the sale of grain; and they consisted also of collecting rentals, and assisting the tenants in the handling of matters relating to taxes.
We think there can be but little doubt that these activities constituted “agricultural labor.” It is quite true that these men performed little, if any, manual labor in connection with these activities, but they did furnish the brain work to make this labor effective. A good farmer works no less with his brains than he does with his hands. Advising with the tenants as to the proper crops to be grown on the various parcels of land in each particular year, so as to best utilize the land and preserve it, was unquestionably “agricultural labor”; so also was the determination of the proper seeds to be planted and the proper fertilizer to be used, and the control and destruction of weeds and pests. So also, we think, was the work done by them in the prevention of soil erosion.
This interpretation of the term “agricultural labor” seems to us in harmony with Treasury Regulation 91, which in article 6 defines the term as “all services performed — (a) by an employee, on a farm, in connection with the cultivation of the soil, the raising and harvesting of crops, or the raising, *337 feeding, or management of livestock, bees, and poultry.” The activities of these subagents with respect to crop rotation, the making of tests and experiments for the proper utilization of the soil, the control and destruction of weeds and pests, and the selection of seed, fertilizer and equipment, and the prevention of soil erosion, would certainly seem to be services “in connection with the cultivation of the soil.”
Such services, the Regulation provides, must be rendered “by an employee, on a farm,” in connection with the cultivation of the soil. These subagents rendered many of these services while physically present on the farms. One of them testified that he spent 65 percent of his time on the farms conferring and advising and directing the farmers. Another testified he spent from 85 to 90 percent of his time on the farms. But whether or not they were physically present on the farm when they rendered these services, we still think they were employees on a farm engaged in the cultivation of the soil. “An employee, on a far'm,” means one employed in farming. One is employed in farming whether he does the work of plowing the ground and planting the seed or does the work of deciding what field is to be plowed and what seed is to be sowed. Farming can no longer be done without brains, if it ever could be. It seems only necessary that the services of the employee must have been rendered in direct connection with the cultivation of the soil. Plaintiff, of course, was a farmer, a very large one, and his sub-agents were his employees, and almost everything they did was in direct connection with the cultivation of the soil.
The Social Security Act Amendments of 1939 defined “agricultural labor” substantially as did the Regulations. They were defined to include “all service performed — (1) On a farm, in the employ of any person, in connection with cultivating the soil * * *.” In order to come within the definition of “agricultural labor” we think it was unnecessary, either under the Regulations or under the Social Security Act Amendments, that the employee actually cultivate the soil himself; it was only necessary that the services rendered should have been rendered “in connection with” the cultivation of the soil. We are of the opinion that the *338 services of these subagents were in connection therewith, and that they were employees on a farm.
At first, the Commissioner of Internal Revenue himself was of this opinion. After consideration of plaintiff’s claims for refunds he decided that these men were engaged in agricultural labor and he allowed the refunds. However, he later changed his mind and reassessed the tax. We think he was right in the beginning.
Defendant raises the technical defense that plaintiff failed to file a claim for refund for the taxes reassessed for the years 1936, 1937, 1938, and 1939. (The taxes for 1940 and 1941 were not reassessed.) We think this does not bar plaintiff. He did file claims for refund for those years after they were first assessed. These claims were allowed, and then the taxes for the years 1936,1937,1938, and 1939 were reassessed. This reassessment was the Commissioner’s final action on the plaintiff’s claims for refund. In making the reassessment the Commissioner merely reversed his former action in allowing the claims for refund. In such case we do not think it is necessary for the plaintiff to file another claim for refund. The Commissioner was under full notice of plaintiff’s position with reference to these taxes and that he demanded a return of them. The purpose of a claim for refund, to put the Commissioner on notice that the taxpayer demands a return of the taxes and the reasons for his demand, it seems to us, has been fully met.
Plaintiff is entitled to recover. In case No. 46388 he seeks to recover the taxes and interest and penalties assessed for the years 1936 to 1939, both inclusive, in the amount of $3,158.79. Judgment will be entered for that amount, together with interest as provided by law. In case No. 46389 he seeks to recover the taxes assessed for the period from "January 1,1937 to June 30,1942, in the amount of $2,086.15. Judgment will be entered in his favor for this amount, together with interest as provided by law. It is so ordered.
Madden, Judge; Jones, Judge; and Littleton, Judge, concur.
Whaley, Chief Justice, took no part in the decision of this case.