**DRUMMONDS POULTRY TRANSPORTATION SERVICE**

**v.**

**Whitney L. WHEELER, Director of Internal Revenue.**

**Horace H. DRUMMOND**

**v.**

**Whitney L. WHEELER, Director of Internal Revenue.**

Civ. Nos. 5–157, 5–158.

United States District Court
D. Maine, S. D.
Sept. 30, 1959.

Irving Isaacson, Lewiston, Me., for plaintiffs.

Peter Mills, U. S. Atty., Portland, Me., Rufus E. Stetson, Jr., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

GIGNOUX, District Judge.

These are actions brought under 28 U.S.C.A. § 1346(a) (1) for refund of Federal Unemployment Taxes paid for the years 1954, 1955 and 1956 in the amounts of $149.44, $240.58 and $295.55, respectively, with interest. By agreement of the parties, the cases were consolidated for trial and, as consolidated, have been submitted to the Court for decision and judgment upon the pleadings and a stipulation of facts.

The only question presented is whether or not the employees with respect to whom the foregoing unemployment taxes were paid by plaintiffs were engaged in "agricultural labor" as defined in Section 1607(*l*) of the Internal Revenue Code of 1939, 26 U.S.C.A. (I.R.C.1939) § 1607 (*l*), and Section 3306(k) of the Internal Revenue Code of 1954, 26 U.S.C.A. (I.R. C.1954) § 3306(k), and the regulations issued thereunder.

The facts disclosed by the pleadings and the stipulation are as follows: During the taxable years in question the taxpayer [1] was engaged, as an independent contractor, in hauling live poultry from the farms on which they were raised to the processing plant of the Fort Halifax Packing Company in Winslow, Maine. The farms were located mostly within a radius of fifty miles of the plant. The taxpayer did not own, operate or participate in the operation of the farms. The taxpayer's method of operation was as follows: Daily poultry pick-ups were made by it in accordance with a weekly schedule furnished by the Packing Company. The taxpayer's employees proceeded by car and truck to the farms scheduled for collection. At each farm crates were unloaded from the trucks, and the employees, including the truck drivers, erected prefabricated enclosures in various parts of the poultry house, caught and crated the poultry and loaded them upon the trucks. The truck drivers then drove the trucks to the processing plant where they were unloaded by employees of the plant. The other members of the pick-up crew returned directly to their homes by car.

The unemployment taxes in question were computed and paid by the taxpayer upon the wages paid to the employees engaged in the above operation, pursuant to the provisions of Section 1600 of the 1939 Code, 26 U.S.C.A. § 1600, and Section 3301 of the 1954 Code, 26 U.S. C.A. § 3301, which impose an excise tax equal to 3% of the total wages paid by an employer to an employee in covered employment. Refund is sought on the ground that the employees involved were performing agricultural labor, which is exempt from tax under the provisions of Section 1607(c) (1) of the 1939 Code and Section 3306(c) (1) of the 1954 Code. As indicated, the sole issue for determination is the application to these employees of the definition of "agricultural labor" for purposes of the exemption, as contained in Section 1607(*l*) of the 1939 Code and Section 3306(k) of the 1954 Code and the regulations issued thereunder.

Section 1607(*l*) of the 1939 Code reads in pertinent part as follows:

(*l*) Agricultural labor. The term "agricultural labor" includes all service performed—

1. The plaintiff Drummonds Poultry Transportation Service is the corporate successor to the plaintiff Horace H. Drummond. Since both actions are identical in all material aspects except the amounts of tax and the years involved, the plaintiffs will be referred to as a single taxpayer.

(1) On a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur bearing animals and wildlife.

\* \* \* \* \*

(4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption.

As used in this subsection, the term "farm" includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, greenhouses or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards.

The material provisions of Section 3306 (k) of the 1954 Code are identical.

Section 403.208 of Treasury Regulation 107, promulgated under the 1939 Code, provides in part as follows:

Sec. 403.208. *Agricultural labor.*—(a) \* \* \*

(b) *Services described in section 1607(l) (1) of the act.* (1) Services performed on a farm by an employee

of any person in connection with any of the following activities are excepted as agricultural labor:

(i) The cultivation of the soil;

(ii) The raising, shearing, feeding, caring for, training, or management of livestock, bees, poultry, fur-bearing animals, or wildlife; or

(iii) The raising or harvesting of any other agricultural or horticultural commodity.

(2) The term "farm" as used in this section includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, nurseries, ranges, orchards, and such greenhouses and other similar structures as are used primarily for the raising of agricultural or horticultural commodities. Greenhouses and other similar structures used primarily for other purposes (for example, display, storage, and fabrication of wreaths, corsages, and bouquets), do not constitute "farms."

\* \* \* \* \*

(e) *Services described in section 1607(l) (4) of the act.* (1) (i) Services performed by an employee in the employ of a farmer or a farmers' cooperative organization or group in the handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, of any agricultural or horticultural commodity, other than fruits and vegetables (see subparagraph (2) of this paragraph), produced by such farmer or farmer-members of such organization or group of farmers are excepted, provided such services are performed as an incident to ordinary farming operations.

(ii) Generally services are performed "as an incident to ordinary farming operations" within the meaning of this paragraph if they are services of the character ordi-

narily performed by the employees of a farmer or of a farmers' co-operative organization or group as a prerequisite to the marketing, in its unmanufactured state, of any agricultural or horticultural commodity produced by such farmer or by the members of such farmers' organization or group. Services performed by employees of such farmer or farmers' organization or group in the handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, of commodities produced by persons other than such farmer or members of such farmers' organization or group are not performed "as an incident to ordinary farming operations."

Section 31.3306(k)–1 of the Treasury Regulations promulgated under the 1954 Code is substantially the same.

The defendant concedes that to the extent the taxpayer's pick-up crews were performing services "on a farm", subsection 1 of Section 1607(l) makes it immaterial *for whom* the work was being performed since the statutory definition expressly includes services performed "in the employ of any person." The defendant contends, however, that the pick-up crews were not engaged in agricultural labor within the meaning of subsection 1 because they were not performing services "in connection with raising or harvesting" an agricultural commodity. The defendant further argues, apparently relying on the regulation, that the pick-up crews were not engaged in agricultural labor within the meaning of subsection 4 of Section 1607 (l) because the taxpayer was not the producer of the poultry in question and hence its crews were not performing service "as an incident to ordinary farming operations."

In the opinion of this Court both contentions must be rejected.

■ Insofar as the services of this taxpayer's pick-up crews were rendered on the farms of the growers, they were embraced within the specific language of subsection 1 of Section 1607(l). The statute clearly classes poultry as an agricultural commodity and expressly includes within the definition of agricultural labor all services performed on a farm (whether or not in the farmer's employ) in connection with raising or harvesting an agricultural commodity. It seems clear that the services of the pick-up crews in catching the poultry, putting them in crates and loading them upon the taxpayer's trucks, all of which were performed on the farms themselves, were no more than the usual procedures of a poultry farmer in "harvesting" his poultry for shipment to market. This Court cannot agree that the mere fact that the growers utilized the taxpayer's pick-up crews, instead of their own labor, to catch and load the poultry removed the operation from the statutory exemption. The express wording of subsection 1 negatives any such limitation. Cf. Stephens v. Cotton Producers Ass'n, D.C.N.D.Ga.1953, 117 F.Supp. 517, 519–521, affirmed sub nom. Johnston v. Farmers Mutual Exchange of Calhoun, Inc., 5 Cir., 1955, 218 F.2d 588.

■ Similarly, the operations of the taxpayer's pick-up crews seem clearly to fall within the scope of subsection 4 of Section 1607(l), which extends the statutory definition of agricultural labor to embrace services, whether or not performed on a farm, in handling or delivering to market any agricultural commodity, so long as they are performed "as an incident to ordinary farming operations." There can hardly be any question but that the services rendered to the growers by this taxpayer's pick-up crews consisted of the handling and delivering to market of an agricultural product, a necessary incident to any agricultural operation. Cf. N.L.R.B. v. John W. Campbell, Inc., 5 Cir., 1947, 159 F.2d 184, 187. And this Court cannot conclude that such services were not performed "as an incident to ordinary farming operations" merely because they were rendered by the taxpayer's pick-up crews

and not by the growers themselves. As stated by the Court in Stephens v. Cotton Producers Ass'n, supra, 117 F.Supp. at page 520:

It seems clear that when a farmer has raised chickens and wishes to market them, catching of the chickens, putting them in coops and loading them on a truck for transportation to market, is an incident to such farming operations. Although the above exemption is contained in a remedial statute and should be construed strictly, it should nevertheless be given due effect if Congress so intended. * * * The mere fact that the farmer, instead of employing his own help to catch and load chickens, procured Farmers Mutual through its employees to do the same, should not defeat the exemption.

Nor can the Court agree with the defendant's contention that because of the absence of the phrase "in the employ of any person" in subsection 4 of Section 1607(l), the services of the taxpayer's pick-up crews, which were otherwise incident to farming operations, were not "agricultural labor" because not performed by employees of the grower. It is true that prior to the enactment of the Social Security Act Amendments of 1939, 53 Stat. 1392, which added subsection l to Section 1607 of the 1939 Code, the person for whom the services were performed was a significant criterion in determining what constituted agricultural labor under the Act. See Burger v. Social Security Board, D.C.S.D.Cal.1946, 66 F.Supp. 619, 622. However, this so-called "identity-of-employer" test proved to be discriminatory against the small farmer, and it was eliminated by the 1939 Amendments. That such was the intent of the Congress, and that the "identity-of-employer" test is not determinative in the application of subsection 4 of Section 1607(l) is evident from a reading of H.R.Rep.No.728, 76th Cong., 1st Sess. 52, and S.Rep.No.734, 76th Cong., 1st Sess. 63, which state that:

paragraph (4) * * * extends the exemption to service (*though not performed in the employ of the owner or tenant or other operator of a farm*) performed in the * * * delivering * * * to market * * * any agricultural * * * commodity, provided such service is performed as an incident to ordinary farming operations * * *.

The expression 'as an incident to ordinary farming operations' is, in general, intended to cover all services of the character described in the paragraph which are ordinarily performed by the employees of a farmer * * * as a prerequisite to the marketing, in its unmanufactured state, of any agricultural * * * commodity produced by such farmer * * *. *The expression also includes the delivery of such commodity to the place where, in the ordinary and natural course of the particular kind of farming operations involved,* the commodity accumulates in storage for distribution into the usual channels of commerce and consumption. (Emphasis supplied.)

For the foregoing reasons, it is the conclusion of this Court that the taxpayer's pick-up crews were engaged in agricultural labor within the meaning of the Act, and that hence their wages were exempt from Federal Unemployment Taxes during the years in question. While it is in no way binding on this Court, it is worthy of note that the Supreme Judicial Court of Maine arrived at the same result in the case of Maplewood Poultry Co. v. Maine Employment Security Commission, 1956, 151 Me. 467, 121 A.2d 360, which involved the application of an identical State statute to an identical factual situation.

In Civil No. 5–157 judgment is ordered for the plaintiff in the amount of $295.55, with interest according to law. In Civil No. 5–158 judgment is ordered for the plaintiff in the amount of $390.02, with interest according to law.