**MID–CONTINENT AERIAL SPRAYERS, INC., Plaintiff-Respondent,**

v.

**INDUSTRIAL COMMISSION of Missouri, DIVISION OF EMPLOYMENT SECURITY of Missouri, Defendants-Appellants,**

and

**John C. Emerson, Defendant.**

No. 8584.

Springfield Court of Appeals.

Missouri.

Oct. 13, 1967.

355

George Schwartz, Jefferson City, for de-
fendant-appellant Division of Employment
Security.

Arthur H. Bitter, Jefferson City, for
defendant-appellant Industrial Commission.

James E. Reeves, Caruthersville, for
plaintiff-respondent.

HOGAN, Judge.

This case involves a construction of the
statutory provisions which except "agri-
cultural labor" from the coverage of the
Employment Security Law, now codified
as Chapter 288, RSMo 1959, V.A.M.S.[1]
The appeal has come to us in this manner:
On October 16, 1962, defendant Emerson
filed an initial claim for benefits, and on
December 13, 1962, the Division administra-
tively determined that he had been engaged
in "insured work" for plaintiff Mid-Conti-
nent Aerial Sprayers during the third and
fourth calendar quarters of 1961 and the
first and second calendar quarters of 1962.
Mid-Continent took a timely administrative
appeal from this determination, maintain-
ing among other things that it was wholly
exempt from contribution under the Em-
ployment Security Law because all the
services performed by all its employees
were "agricultural labor." Subsequently,
a hearing was held before an appeals
referee, as provided by Section 288.190.
At that time, two matters were taken up
and considered: 1) whether plaintiff Mid-
Continent was an "employer," as defined
by Section 288.032; and 2) whether de-
fendant Emerson's services for Mid-Con-
tinent constituted "insured work" within

1. All references to statutes are to this revision, except where otherwise specifically noted.

the meaning of Section 288.030(18). On May 23, 1963, the appeals referee rendered two decisions, one holding that some of the work performed by some of the employees of Mid-Continent was exempt as "agricultural labor," but that plaintiff was an employer under the Law, and the other ruling that defendant Emerson had been engaged in "insured work" during the period in question. Plaintiff thereupon requested a review by the Industrial Commission (Section 288.020), which simply adopted and affirmed the decision of the appeals referee on the basis of the evidence previously submitted.

■■■ Plaintiff Mid-Continent thereupon filed this action for judicial review of the Commission's finding, as provided by Section 288.210, on the ground that all the services of all its employees were excluded from coverage as "agricultural labor." The trial court found that the plaintiff was not an employer subject to the Law and reversed the decision of the Commission outright. The Commission and the Division thereupon appealed, as they had a right to do. Dubinsky Brothers, Inc. v. Industrial Commission of Mo., Mo., 373 S.W.2d 9, 14 [1]. Since the Employment Security Law is not a revenue law in the appellate jurisdictional sense, and neither the Commission nor the Division is a "state officer" within the meaning of Section 3, Article V, of the Constitution of 1945, we have primary jurisdiction of the appeal. E. B. Jones Motor Co. v. Industrial Commission of Mo., Division of Employment Security, Mo., 298 S.W.2d 407, 410 [1] [2]. The cause is before us for review as provided by Section 22, Article V, of the Constitution of 1945. We must determine whether the findings of the Commission are supported by competent and substantial evidence upon the whole record, and are authorized by law. We may not substitute our own judgment on the evidence for that of the Commission, but we are required to decide whether it could reasonably have made its findings and reached its result upon consideration of all the evidence before it, and we are authorized to set aside its decision if it is clearly contrary to the overwhelming weight of the evidence. Wood v. Wagner Electric Corp., Mo., 355 Mo. 670, 674, 197 S.W.2d 647, 649 [1–5]; Union-May-Stern Co. v. Industrial Commission, Mo.App., 273 S.W.2d 766, 768 [1]; Meyer v. Industrial Commission of Mo., 240 Mo.App. 1022, 1031, 223 S.W.2d 835, 839 [4].

As material to our review, the facts are that plaintiff Mid-Continent Aerial Sprayers is a corporation which engages in the business of spraying and dusting crops with fertilizers, pesticides and defoliants. Its headquarters and base of operations is located near Hayti, Missouri, where it maintains an airstrip, 14 airplane hangars, a maintenance shop, and an office. During the period involved here, the plaintiff owned between eight and 12 airplanes, and from time to time leased others.

The plaintiff does business by contracting orally with an individual farmer for what the plaintiff calls a "complete service." At least one of the plaintiff's officers, and possibly others, have had specialized training in the use of agricultural chemicals, and as a first step in the performance of its service, plaintiff's managing officer inspects the fields and charts the area to be sprayed. Plaintiff then recommends the type of chemical to be used and furnishes the airplane, the chemical, the pilot, and sometimes further technical advice. Plaintiff is paid "by the acre" for the complete service.

Plaintiff had several different classes of employees on its payroll during the period involved. It employed between eight and ten airplane pilots, whose services the appellants concede to be excluded. Plaintiff also had at least three employees, called mixers and loaders, whose duty it was to mix the chemicals used and load them into the airplanes. These employees also assisted the pilots in routine maintenance of the airplanes. Sometimes the chemicals are hauled from the shipping

dock or chemical supply house and delivered directly to the airplanes, and are loaded directly at the spraying site, and sometimes the chemicals are loaded at the "home field" near Hayti. Mr. Richard Reade, who described himself as "owner of the company," was asked at the hearing before the appeals referee " * * * what percentage of your spraying business was conducted by loading on your home field * * * and [what] percent * * * was conducted off the farmers' strips * * * located on farms," and he answered " * * * I would say in round figures * * * 85 percent of our work was done on what we call farm type strips. * * * " Mr. Reade repeated this estimate concerning the situs of the mixing and loading work on examination by the referee. The referee pursued the subject, asking if the plaintiff maintained any record to indicate by pay period whether the loaders had worked on the farm or at the home field, and the plaintiff's secretary-treasurer, a Mr. Kelley, stated, "It would be impossible to keep an individual record of each area * * * [because] we treat upwards of a thousand accounts." Mr. Reade also stated, at another point, that the situs of the loading work "varies." The plaintiff also employed at least three mechanics or maintenance men who worked primarily at its base of operations, and Mr. Kelley, who can be classified as a full-time office worker. Mr. Kelley also performed his duties primarily at the plaintiff's home field near Hayti.

Mr. Emerson, the claimant, testified at the appeals hearing that he went to work for the plaintiff, he "believed," in June 1960 and worked until June 1962. His work was "mostly maintenance and loading." Mr. Emerson said he did not do all of his work in the shop, because "when we were on the road, we worked where we were at." Asked to compare the percentage of time spent in the shop with the time spent "out on the road," Mr. Emerson stated, "I believe it was about 50 percent." Mr. Emerson also did some mixing and loading, "if I was there at the time." As opposed to the other maintenance men, Mr. Emerson's work required him to travel with the airplane.

The appellants' position is that, on the evidence submitted, the Commission could reasonably have concluded that the respondent plaintiff was an "employer" under the statutory definition, because it had at least four or more individuals in employment who were engaged in covered activity for some portion of a day, as required by Section 288.032(1); that defendant Emerson was engaged in "insured work," and that in no view of the matter could it be said that all the services performed by all plaintiff's employees were excluded. The respondent sticks to its guns in this court, and simply argues that *all* its activities are excluded from coverage because they constitute "agricultural labor."

It is unnecessary for the purpose of this opinion to discuss the origin, purpose and development of our Employment Security Law and the provisions therein which exempt "agricultural labor."[2] The exemptive provisions applicable at the time here involved were enacted L.1957, pp. 534–535, were subsequently codified as Section 288.034(6) (a), and read, so far as material:

"(6) The term 'employment' shall not include:

(a) 'Agricultural labor.' This term includes all services performed:

a. On a farm, in the employ of any person, in connection with cultivating

**2.** Those interested, if any, in the general background of the legislation and the "agricultural labor" exclusion may consult A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S.W.2d 184; Pioneer Potato Co., Inc. v. Division of Employment Security, Dept. of Labor and Industry, State of New Jersey, 17 N.J. 543, 111 A.2d 888, 53 A.L.R. 2d 397; Anno., 53 A.L.R.2d 406 (1957).

the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training and management of livestock, bees, poultry, fish, and fur-bearing animals and wildlife.

b. In the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane or flood, if the major part of such service is performed on a farm."

The respondent's argument that all its activities are exempt is based upon the premise that a general sort of exemption is granted to all agricultural activities by Section 288.034(6) (a), and that the definitions following do not restrict, but only illustrate, the activities which are excluded. In support of this point, the respondent cites such cases as Murphy v. Mid-West Mushroom Co., 350 Mo. 658, 168 S.W.2d 75; St. Louis Rose Co. v. Unemployment Compensation Commission, 348 Mo. 1153, 159 S.W.2d 249; Stuart v. Kleck, (9 Cir.) 129 F.2d 400; Chester C. Fosgate Co. v. United States, (5 Cir.) 125 F.2d 775; Scully v. United States, 70 F.Supp. 239, 108 Ct.Cl. 310, and the Pioneer Potato case, supra. It is true, of course, that the employment security acts of the several states and their federal counterparts represent a cooperative effort by the states and the national government to carry out a common public purpose, and both judicial and executive constructions of the federal legislation are persuasive in construing our Employment Security Law, Marty v. State Tax Commission of Mo., Mo., 336 S.W.2d 696, 701 [4]; American Nat. Ins. Co. v.

Keitel, 353 Mo. 1107, 186 S.W.2d 447, 448–449 [2–4]; Arnold College for Hygiene, etc. v. Danaher, 131 Conn. 503, 41 A.2d 89, 90 [1]; 82 C.J.S. Statutes § 371, p. 859, but without attempting any judicial gloss on the federal cases, we do not believe they stand for the proposition to which the respondent cites them. The *Stuart* and *Fosgate* cases held, inter alia, that services performed on a farm, in the employ of any person, in connection with the cultivation of the soil, were exempted, thus interpreting Treasury Regulation 90, promulgated in aid of the Social Security Act of 1935, to exempt the services involved in those two cases without regard to the identity of the employer. Stuart v. Kleck, supra, 129 F.2d at 403 [3] [4]; Chester C. Fosgate Co. v. United States, supra, 125 F.2d at 778 [2]. See Latimer v. United States, D.C.Cal., 52 F.Supp. 228, 234 [6]. Subsequently, the Congress adopted a definition of "agricultural labor" which conformed to this interpretation. 53 Stat. 1373, 1377.[3] The *Scully* case, 70 F.Supp. 239, 108 Ct.Cl. 310, rather broadly defined the phrase "agricultural labor," but the services involved were performed by employees, not by independent contractors, and most of the activity involved took place on a farm. Scully v. United States, supra, 70 F.Supp. at 254. The *Pioneer Potato* case, supra, 17 N.J. 543, 111 A.2d 888, 53 A.L.R.2d 397, dealt with certain post-harvest activities which the Congress exempted by amending the law in 1939, 53 Stat. 1373, 1377–1378, see Burger v. Social Security Board, D.C.Cal., 66 F.Supp. 619, 622–625, and the ruling in *Pioneer Potato* does not bear on the kind of activity in dispute in this case. The two Missouri cases held that the term "agricultural labor" was not limited to such labor as is ordinarily performed on a farm, but included growing flowers in greenhouses and the culture of mushrooms. We agree that

3. Without tracing all its subsequent legislative history, the paragraph in question is at this writing codified as part of the Federal Unemployment Tax Act, 26 U.S. C.A. § 3306(k) (1). The cognate Missouri provision is Section 288.034(6) (a) a. For a comparison of the Federal definitions, see Anno., supra, 53 A.L.R.2d 406, § 1, pp. 407–409.

these rulings were sound; indeed the definition of the word "farm" was subsequently expanded to include the kind of activity considered in the *Murphy* and *St. Louis Rose* cases. See Section 288.034(6) (a) e.

 But whatever may have been the true rationale of these cases, and whether or not the expressed inclusions in the statutory definition of "agricultural labor" are exclusive,[4] we cannot agree that the nature of the work alone determines whether a given service is exempted by subparagraphs a. and b. of Section 288.034(6) (a), without regard to any other factor. Subparagraph a. exempts all services performed "[o]n a farm, in the employ of any person, * * * in connection with raising or harvesting any agricultural or horticultural commodity * * *." (Emphasis added.) This subparagraph thus excludes all activity incident to the growing process, whether or not the worker is in the farmer's employ, Drummonds Poultry Transportation Service v. Wheeler, D.C. Maine, 178 F.Supp. 12, 15 [1], but requires that the services be performed on a farm. Farming, Inc. v. Manning, supra, 219 F.2d at 781 [1]. Subparagraph b. broadly excludes managerial and maintenance services, but requires that the services be performed "[i]n the employ of the owner or tenant or other operator of a farm". The words "employ," "employment," and "employee" are used in the Employment Security Law in their plain or ordinary and usual sense, A. J. Meyer & Co. v. Unemployment Compensation Commission, supra, 348 Mo. at 159–161, 152 S.W.2d at 189–190 [4, 5], and for the activities described in subparagraph b. to be exempt they must be performed by an employee. Scofield v. Tinnin, (5 Cir.) 171 F.2d 227, 228–229 [1] [2]. So, in addition to the character of the service, the situs of the work must be considered if exemption is claimed under Section 288.034(6) (a) a., and the identity of the employer must be taken into account if exemption is claimed under Section 288.034(6) (a) b. We reject the respondent's contention that it is wholly exempt simply because its employees are engaged in activity incident to the production of an agricultural commodity. We must consider the respondent's claim of exemption piecemeal.

First, the parties concede that the activities of the pilots—the crop-dusters themselves—are excluded, and we agree. Florek v. Sparks Flying Service, Inc., 83 Idaho 160, 359 P.2d 511, 512–513 [1, 2], [3].

 The respondent also employed "an average of three" mechanics or maintenance men, whose duty it was to keep the airplanes in good repair. Primarily, their work was done at the respondent's base of operations, although they sometimes worked in the field. The respondent also employed a Mr. Kelley, who was a full-time office worker. The Commission has found that the services performed by these employees—the maintenance men and the office worker—are not excluded, and again we agree. Section 288.034(6) (a) b. excludes services performed "* * * in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment," but the exclusion applies only if the work is done by employees of the owner, tenant or operator of the farm on which the work is done, Scofield v. Tinnin,

4. The authority is divided on the question. Some decisions indicate such statutory inclusions are definitions and extensions of the term "agricultural labor," Jones v. Gaylord Guernsey Farms, (10 Cir.) 128 F.2d 1008, 1010–1011 [2]; Equitable Life Ins. Co. v. Iowa Employment Security Comm., 231 Iowa 889, 2 N.W.2d 262, 264–265 [2], 139 A.L.R. 885, indicating that "* * * both the legislative and [the previous] executive interpretation[s] of the act [are] in accord." Christgau v. Woodlawn Cemetery Ass'n., 208 Minn. 263, 293 N.W. 619, 628. Other decisions support respondent's position that the definitions are not exclusive. Farming, Inc. v. Manning, (3 Cir.) 219 F.2d 779, 782 [2].

supra, 171 F.2d at 229 [2], and in this case the maintenance men and Mr. Kelley were clearly the respondent's employees. Our conclusion is supported by the fact that Treas.Reg. § 31.3306(k)–1 (c) (2) and (3) (1961) so interpreted the parallel Federal statute, now codified as 26 U.S.C.A. § 3306 (k) (2).[5] The regulation read:

"(2) The services described * * * may include, for example, services performed by carpenters, painters, mechanics * * * bookkeepers, and other skilled or semiskilled workers, which contribute in any way to the conduct of the farm or farms, as such, operated by the person employing them, as distinguished from any other enterprise in which such person may be engaged.

(3) Since the services described in this paragraph *must be performed in the employ of the owner or tenant or other operator of the farm*, services performed by employees of a commercial painting concern, for example, which contracts with a farmer to renovate his farm properties, do not constitute agricultural labor." (Emphasis added.)

◼ Our limited research on the subject indicates no appreciable change in subsequent Treasury Regulations, and if judicial and executive interpretations of Federal legislation are not absolutely controlling, they are, as we say, persuasive. Section 288.034 (1); American Nat. Ins. Co. v. Keitel, supra, 353 Mo. 1107, 186 S.W.2d at 448–449.

The status of the work done by the mixers and loaders presents more difficulty. On principles similar to those stated in the *Florek* case, supra, the parties seem agreed that the services performed by the mixers and loaders would be exempt under the provisions of Section 288.034(6) (a) a. as an activity in connection with raising an agricultural commodity, if the services were performed on a farm.

The evidence bearing on this point, presented at the administrative hearing was that the chemicals used were usually loaded on the aircraft at the operating or dusting site. Respondent's managing officer "estimated" that 85 per cent of the loading was done on "farm type" strips. This witness was also asked to describe what the mixers and loaders (which he referred to simply as loaders) did, and he answered: "The loaders drive and pick up tank trucks, whatever it may be, the vehicle that carries the water, to wherever we may be working, and he mixes the chemical with water or whatever we may use, and loads it in the airplane. Assists the pilot in routine maintenance and things like that." The witness reiterated, at yet another point, that 85 per cent of the loading was done on the farms where respondent worked. Mr. Kelley interjected that "spray operations are so localized that one time it might be all done on the strip, sometimes maybe none done on the strip." It was admitted that respondent's records did not show the percentage of the loading work done on the farm, or that done off the farm. Holding that the respondent's records were inadequate in this respect, the Commission found that since the appellant kept no record indicating the situs of the loaders' work, "all services performed by the mixers and loaders must be considered as being performed in 'employment' and covered by the Law."

Section 288.034(7) provides, in material part, that:

"The term 'employment' shall include or exclude the entire service of an individual for an employing unit during a pay period in which his services are not all excluded under the foregoing provisions, on the following basis: If the services performed during one-half or more

5. Which reads: "(2) in the employ of the owner or tenant or other operator of a farm, in connection with the operation, management, conservation, improvement, or maintenance of such farm and its tools and equipment, or in salvaging timber or clearing land of brush and other debris left by a hurricane, if the major part of such service is performed on a farm."

of any pay period constitute employment as otherwise defined in this law, all the services performed during such period shall be deemed to be employment; but if the services performed during more than one-half of any such pay period do not constitute employment as otherwise defined in this law, then none of the services for such period shall be deemed to be employment."

■ The appellants argue that since a proper record was not kept and since the respondent had the burden of proving exemption under Section 288.034, the Commission's finding is justified. We cannot agree to this argument. Assuming that respondent had the burden of showing exemption, we could not go further and hold that the exemption must be proved by introducing a record, rather than by giving sworn testimony. The *only* evidence presented in the record bearing upon the situs of the mixers' and loaders' work is the evidence we have just recited, and a paragraph in the appeals referee's findings that a deputy had determined administratively (how, why, or by what method is not shown) that respondent's chemical mixers were performing services in "employment." The appellants' argument amounts to an assertion that respondent's failure to keep a record affirmatively shows where these workers performed their services. We find no justification for this argument in the Employment Security Law, nor in the unreported Ohio decision to which the Commission cited us. The Division is given certain inquisitorial powers by the Employment Security Law, and the record does recite that some administrative determination had been made prior to the time evidence was taken. Perhaps the determination was made upon the basis of some fact discovered by the Division, but all the appellants have to present here is the absence of any record made by the respondent. We cannot logically infer the existence of any fact, we think, from the respondent's lack of records. The minimum standard for any administrative decision is that it be supported by competent and substantial evidence, Article V, Section 22, Constitution of 1945; State ex rel. St. Louis Pub. Serv. Co. v. Public Service Commission, 365 Mo. 1032, 1041–1042, 291 S.W.2d 95, 101–102 [7], and if we are to affirm the administrative finding, the evidence upon which it is based must appear on the record presented. Koplar v. State Tax Commission, Mo., 321 S.W.2d 686, 695 [8]. The Commission's finding that the mixers and loaders were engaged in covered employment is not supported by competent and substantial evidence upon the whole record, and is therefore not authorized by law.

■ There remains the matter of the claim of defendant Emerson. Defendant Emerson was engaged in performing services as a mechanic or maintenance man. As we have previously stated, he was exempt under the provisions of Section 288.034(6) (a) b., if at all, and this subparagraph requires that his work be done in the employ of the owner, tenant, or other operator of the farm. Mr. Emerson was employed by the respondent, his services were not exempt, and the Commission's finding that he was entitled to benefits is correct.

■ The record also indicates that the respondent had, during the period involved, at least four persons employed in maintenance work and office work in each of 20 different calendar weeks, and we agree that the respondent is an "employer" within the meaning of Section 288.032.

For the reasons indicated, we hold that the services of the pilots and the loaders, or mixers and loaders, were exempt from the operation of the Employment Security Law; the respondent was an "employer" within the meaning of the Employment Security Law, and defendant Emerson was engaged in covered employment. The cause is therefore reversed and remanded, with directions to enter a judgment not inconsistent with the views expressed in this opinion. It is so ordered.

STONE, P. J., and TITUS, J., concur.