**WORKMEN'S MUTUAL FIRE INSURANCE SOCIETY, INC., Plaintiff,**

v.

**Harold B. A'HEARN, United States District Director of Internal Revenue, Defendant.**

United States District Court
S. D. New York.

Feb. 17, 1959.

Waldman & Waldman, New York City, for plaintiff, Louis Waldman, Seymour M. Waldman, New York City, of counsel.

Arthur H. Christy, U. S. Atty., for Southern Dist. of New York, New York City, for defendant, James McKinley Rose, Jr., Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

Plaintiff sues for the recovery of additionally assessed income taxes paid

under protest. The additional assessment was based upon the disallowance of plaintiff's treatment of losses upon sales of parcels of certain real estate as capital losses instead of ordinary losses. The parcels of real estate were those acquired either by foreclosure or conveyance in lieu of foreclosure when there were defaults upon mortgages held by plaintiff. Plaintiff is a mutual fire insurance company which is successor to a fraternal organization. At one time most of plaintiff's funds were invested in mortgages upon real property. Many of the mortgagors were plaintiff's policyholders. Certain of the mortgagors defaulted and plaintiff was obliged to take in the mortgaged real estate. Immediate attempts were made to dispose of it but before disposal rents were collected and repairs made. Upon disposal of a parcel plaintiff treated as a long term capital loss any excess of the debt secured over the amount realized and carried the loss forward for use in wiping out long term capital gains.[1] The transactions in question here were sales made in 1945, losses on which plaintiff attempted to offset in its 1950 tax return against capital gains realized in that year. The propriety of that attempted offset depends upon the status of the losses as capital losses rather than ordinary losses.

The determination of that status depends, in turn, upon whether the parcels of real estate were "capital assets" or were excluded from that category because they were "real property used in the trade or business of the taxpayer" within the terms of section 117(a) (1) of the Internal Revenue Code of 1939 as amended by section 115(b) of the Revenue Act of 1941, 55 Stat. 698, and by section 151(a) of the Revenue Act of 1942, 56 Stat. 846, 26 U.S.C. § 117(a) (1). Speaking broadly, losses on sales of "capital assets" could, under the law in force in 1945, be used only against gains on sales of capital assets and could be carried forward if not so used. Losses on sales of real property used in trade or business, on the other hand, could be used only against ordinary income and could not be carried forward if not so used. See Internal Revenue Code of 1939 section 23(g) (1), 53 Stat. 13, 26 U.S.C. § 23(g) (1), and section 117 with particular reference to section 117(j) (2), as added by section 151(b) of the Revenue Act of 1942, 56 Stat. 846, 26 U.S.C. § 117(j) (2).

The purpose of the exclusion of real property used in the trade or business of the taxpayer from the category of capital assets was evidently to permit a taxpayer who had been forced by depressed conditions to dispose of business property at a loss to use that loss to reduce the ordinary income upon which his tax would be calculated. This is indicated by the Senate Finance Committee's Report on the Revenue Bill of 1942, Senate Report 1631, 77th Cong. 2nd Sess. There the Senate Committee recommended that there be added to the House bill a provision taking from the definition of capital assets buildings and real estate used in the business of the taxpayer. It was said on p. 50, "[i]t is believed that this Senate amendment will be of material benefit to businesses, which, due to depressed conditions, have been compelled to dispose of their plant or equipment at a loss."

The relevant provisions of the determinative section 117(a) (1) above referred to state that "[t]he term 'capital assets' means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23(l), * * * or real property used in the trade or business of the taxpayer."

We have a reliable guide for the construction of this section in Judge Smith's

1. Internal Revenue Code of 1939, Section 117(e), as amended by Section 212(b), Revenue Act of 1939, 53 Stat. 869, and by Section 150(c), Revenue Act of 1942, 56 Stat. 844, 26 U.S.C. § 117(e).

opinion in Grier v. United States, D.C. Conn., 120 F.Supp. 395, adopted by the Court of Appeals for this Circuit, 218 F.2d 603. There, at page 397, of 120 F. Supp., he called attention to section 23 (*l*) of the Internal Revenue Code of 1939, as amended by section 121(c) of the Revenue Act of 1942, 56 Stat. 819, 26 U.S.C. § 23(*l*), and its provision for a "reasonable allowance for the exhaustion, wear and tear * * * (1) of property used in the trade or business, or (2) of property held for the production of income." He based on section 23(*l*) a holding that the class of property "used in the trade or business" of the taxpayer did not include property "held for the production of income".

■ Starting from that it is clear that the mortgages, of which the parcels of real estate were a product, were capital assets. They were held solely for the purpose of producing income. The insurance company was not in the business of dealing in mortgages. If the mortgages had been sold they would have been properly treated as capital assets. Our question therefore is whether the conversion of the mortgages into real estate changed the purpose of the holding of the property so that it no longer could be said that the purpose was the production of income. It is true that, under subdivision 7 of section 81 of the Insurance Law of the State of New York, Chapter 28 of the Consolidated Laws, plaintiff was forbidden to make original investments in real estate, except for its own occupancy, and that it could hold realty such as realty acquired by foreclosure only five years unless extensions were obtained from the Superintendent of Insurance. Such extensions were, incidentally, obtained in this case. The mere fact that the real estate at the moment of sale was not being held for the primary purpose of producing income is not, however, determinative. If we accept the analogy of the example cited by the Finance Committee of the Senate in the Report above referred to, the character of the property persists at least until there has been a voluntary conversion by the taxpayer. It will be remembered that the Finance Committee explained that plant or equipment which was sold because of depressed conditions would still be, at the time of sale, property used in the trade or business of the taxpayer. The hypothesis of a sale of plant or equipment because of depressed conditions necessarily presumes a sale of plant or equipment no longer used or useful in the trade or business of the taxpayer. The statute contemplated that a plant's attributes as property used in the business should persist in spite of the fact that it had lost its usefulness. Similarly the attributes of the property here involved as property held for the production of income persist in spite of the fact that its income producing capacity has been impaired.

The taxpayer properly treated the parcels of realty as capital assets.

Settle judgment in favor of plaintiff on notice.