Elizabeth N. MARTY, Susan Marty Dexter, Mary Marty Eberhardt, Elizabeth Marty Tait, and Samuel C. Marty, Jr., Appellants,

v.

STATE TAX COMMISSION OF MISSOURI, James M. Robertson, John A. Williams, and J. Ralph Hutchison, being members of and constituting the State Tax Commission of Missouri; and Milton F. Carpenter, Director of Revenue of the State of Missouri, Respondents.

No. 48106.

Supreme Court of Missouri,

Division No. 1.

June 13, 1960.

Rehearing Denied July 11, 1960.

Richard S. Righter, Henry W. Fox, William H. Leedy, Kansas City, for appellants.

John M. Dayton, Atty. Gen., Donal D. Guffey, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

On February 28, 1955, plaintiffs sold the Rialto Building which is located on the southwest corner of Ninth Street and Grand Avenue in Kansas City, Missouri. They had owned the building for several years prior to the time it was sold. In their Missouri State Income Tax Partnership Return for the year 1955 plaintiffs classified said building as a "Capital Asset" which had been held for more than six months and hence they took into account only fifty per cent of their gain from the sale of said building in computing their net income for that year. In June 1958 defendant Milton F. Carpenter, Director of Revenue of the State of Missouri, made additional income tax assessments against plaintiffs for the year 1955 (totaling $11,886.69) based upon the proposition that the gain resulting from the aforesaid sale should have been returned as an ordinary gain and taxed at one hundred per cent. Thereafter, plaintiffs duly appealed said additional assessments to the State Tax Commission of Missouri and said Commission entered its decision to the effect that the sale in question "was a sale of property used in petitioners' trade or business and the gain therefrom was ordinary gain taxable at one hundred per cent." In due time plaintiffs filed a petition in the circuit court seeking a judicial review of the decision of the State Tax Commission. The reviewing court thereafter affirmed the decision of the Commission and plaintiffs have appealed to this court.

We have appellate jurisdiction because the case involves "the construction of the revenue laws of this state." Article V, Section 3, Constitution of Missouri 1945, V.A.M.S.

Prior to 1947 there was no distinction between long-term and short-term capital gains under the laws of this state. See Section 11345 RSMo 1939. One hundred per cent of any gain was taken into account in computing net income. In 1947 said section was repealed and, as re-enacted, contained the following provision: " * * * In any case where real or personal property has been held for more than six months only fifty per cent of the gain or loss resulting from sale or exchange shall be taken into account in computing net income * * *." Section 143.100, subd. 1 RSMo 1949, V.A.M.S. Under that amendment it would appear that any real or personal property held for more than six months would qualify as a long-term capital gain.

In 1953 said section 143.100 was again repealed and re-enacted. The re-enacted section (which was the section in effect during 1955 when plaintiffs sold their building) contained extensive changes. Applicable portions thereof are as follows: "In any case of sale of capital assets, consisting of real or personal property which has been held for less than six months one hundred per cent of the gain or loss shall be taken into consideration in computing net income; where real or personal property has been held for more than six months only fifty per cent of the gain or loss resulting from sale or exchange shall be taken into account in computing net income * * *. The term 'Capital Assets', as used in this subsection, means property held by the taxpayers (whether or not connected with his trade or business), but does not include (1) Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory

of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; (2) Property used in his trade or business, of a character which is subject to the regular allowance for depreciation, *or real property used in his trade or business;* (3) A copyright; a literary, musical, or artistic composition or similar property; held by a taxpayer in whose hands the basis of such property is determined, for the purpose of determining gain from a sale or exchange, in whole or in part by reference to the basis of such property in the hands of the person whose personal efforts created such property; (4) Gain or loss on the sale of property as defined in the foregoing descriptions, subdivisions (1) to (4), shall be classified as ordinary gain or loss transactions taxable one hundred per cent." (Emphasis added.) Section 143.100, Laws 1953, p. 745. As we have indicated, the instant additional assessments were based upon a finding (under the quoted provisions of said 1953 enactment) that the Rialto Building was not a "capital asset" because it was "real property used in his [plaintiffs'] trade or business" and hence the gain resulting from its sale should "be classified as ordinary gain * * * taxable one hundred per cent."

It is of interest to note that in 1959 Section 143.100 was again repealed and re-enacted and, as re-enacted, subsection (2) was changed by adding the word "personal" before "property" at the beginning thereof and the latter provision of said subsection (the provision here involved), to wit, "or real property used in his trade or business," was deleted therefrom. See P.P., Vol. 10 V.A.M.S. It follows from the foregoing that the specific provision here involved was only in effect for the period of time between the effective dates of the 1953 and 1959 enactments.

The case was submitted to the circuit court upon an agreed statement of facts and the question involved is therefore one of law.

The Rialto Building was constructed in 1910 by Albert Marty who was the grandfather of four of the plaintiffs. It is a 13-story office building and in 1955 was occupied by approximately 70 tenants. Through the years various interests in the property were held by members of the Marty family and by family-controlled corporations. In 1945 the entire title was acquired by Samuel C. and Elizabeth N. Marty, husband and wife. It was evidently the desire of Samuel C. Marty to give his interest in the building to his wife and children, plaintiffs herein. Consequently, on December 7, 1950, the title was conveyed to plaintiffs as follows: a ³⁄₇ interest to Elizabeth N. Marty, and a ⅟₇ interest each to Susan Jane Marty Ciancia, Mary Elizabeth Marty Eberhardt, Elizabeth M. Tait, and Samuel C. Marty, Jr.

We quote the following from the agreed statement of facts: "(a) Elizabeth N. Marty, the wife of Samuel C. Marty, is a housewife residing with her husband at 4561 Walnut Street, Kansas City, Missouri, * * *. (b) Susan M. Dexter, the daughter of Samuel C. Marty and Elizabeth N. Marty (who was in 1954 and 1955 the wife of Nino M. *Chiari*) was a housewife then residing with her husband in New York City * * *. (c) Mary M. Eberhardt, the daughter of Samuel C. Marty and Elizabeth N. Marty, and the wife of Charles L. Eberhardt, is a housewife and mother and resides with her husband in Washington, D. C. * * *. (d) Elizabeth M. Tait, the daughter of Samuel C. Marty and Elizabeth N. Marty, and the wife of William W. Tait III, is a housewife residing with her husband in New Haven, Connecticut * * *. (e) Samuel C. Marty, Jr., the son of Samuel C. Marty and Elizabeth N. Marty, a student engaged in the study of medicine at the School of Medicine, University of Pennsylvania, and a resident physician at a hospital in St. Paul, Minnesota * * *. 5. That all of the petitioners are and were more than twenty-one years of age; that none of the petitioners personally at any

time participated in any respect in the management or operation of the Rialto Building; * * * 6. That the operation and maintenance of the building, including the supervision of all building personnel, the hiring, discharging and fixing of compensation of building personnel, purchase of all building supplies, promotion of building space before the public, assignment of rental space, collection of rentals, payment of wages to building personnel and other expenses of operation was contracted to A. W. Childs & Sons, a real estate firm in Kansas City, Missouri, as building managers; that the said building managers were employed by Samuel C. Marty who at all times herein was the duly authorized attorney in fact of all of the petitioners herein in all matters pertaining to the operation of the said Rialto Building; that under the agreement of building management Samuel C. Marty was to be consulted before extraordinary expenditures were made and was to be consulted concerning policy questions arising in the operation of the Rialto Building, but in fact Samuel C. Marty was consulted infrequently * * *."

The question presented upon this appeal is whether, under the agreed facts, a proper construction of the 1953 enactment of Section 143.100 would require appellants to take into account one hundred per cent of the gain they realized from the sale of the Rialto Building in 1955, as contended by respondents, or, fifty per cent thereof, as appellants contend. Appellants have briefed three theories under which they say the statute should be construed as requiring that they account for only fifty per cent of said gain. Since our view in regard to the first point briefed disposes of the case we need not consider the other two.

The first contention briefed by appellants is that the Rialto Building was not used in their "trade or business" and therefore it was a capital asset which had been held for more than six months and hence only fifty per cent of their gain was required to be taken into account in computing their net income for the year in question.

In approaching the consideration of the question presented we should have in mind certain fundamental rules of statutory construction. "The basic rule of statutory construction is first to seek the intention of the lawmakers and, if possible, to effectuate that intention. Laclede Gas Company v. City of St. Louis, 363 Mo. 842, 253 S.W.2d 832, 835[2]. The court should ascertain the legislative intent from the words used if possible and should ascribe to the language used its plain and rational meaning. A. P. Green Fire Brick Co. v. Missouri State Tax Commission, Mo., 277 S.W.2d 544, 545[3]; Tiger v. State Tax Commission, Mo., 277 S.W.2d 561, 564[2]." State ex rel. Wright v. Carter, Mo.Sup., 319 S.W.2d 596, 599. We have also recently said, "it is familiar doctrine that tax laws are to be strictly construed. If the right to tax is not plainly conferred by the statute, it is not to be extended by implication." In re Gerling's Estate, Mo.Sup., 303 S.W.2d 915, 919.

The question presented is one of first impression in this state. The parties agree that the provision in question has not been construed by a Missouri appellate court. Moreover, we have found no case in which the courts of this state have defined the phrase "trade or business." It is also conceded that neither the Missouri nor Federal income tax laws or regulations define that phrase. For whatever aid they may be, we have found cases in other states, such as Ford v. Industrial Accident Commission, 53 Cal.App. 542, 200 P. 667, and Setter v. Wilson, 140 Kan. 447, 37 P.2d 50, which have held that owners renting property for profit were not engaged in a "trade or business" within the meaning of workmen's compensation acts. However, the principal source of judicial decision upon the meaning of that phrase, particularly as relates to the use of real estate, is the federal cases construing various provisions of the federal income tax laws.

The word "trade" has been defined as "The business which a person has learned and which he carried on for procuring subsistence, or for profit; occupation or employment, particularly mechanical employment; distinguished from the liberal arts and learned professions, and from agriculture. * * * mercantile or commercial business in general, or the buying and selling, or exchanging, of commodities, either by wholesale or retail within a country or between countries." Black's Law Dictionary, Fourth Edition. In Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, the court approved a definition of "business" as " 'That which occupies the time, attention, and labor of men for the purpose of a livelihood or profit.' 1 Bouvier's Law Dict. p. 273." Appellants point out that none of them had anything personally to do with the maintenance or management of the Rialto Building. In answer to that suggestion respondents assert that the federal cases have rather generally held that if the management of rental properties is a "trade or business" the taxpayer is engaged therein even though he is acting through an agent. Gilford v. Commissioner of Internal Revenue, 2 Cir., 201 F.2d 735. The respondents have cited a number of cases from the federal courts which hold that the regular and continuous activity required to maintain rental property and to furnish the services to tenants that are required in keeping the property advantageously rented, falls within the concept of "trade or business" as that phrase is used in the 1939 Internal Revenue Code provision (26 U.S.C.A. § 117(a) (1) ) defining capital assets. See Gilford v. Commissioner of Internal Revenue, supra, and Fackler v. Commissioner of Internal Revenue, 6 Cir., 133 F.2d 509. However, the decisions of the federal courts are not uniform upon that question and some of the more recent cases are to the contrary and support the position of appellants herein. In Chicago Title & Trust Co. v. United States, 7 Cir., 209 F.2d 773, the taxpayer, an executive officer of a clothing manufacturing business, had for many years invested his savings in real estate in order to obtain the rental income, and his holdings had become extensive. The properties were managed by real estate firms under his general supervision. Under that state of facts the court held that he was not engaged in the regular operation of a business of renting real estate and therefore losses sustained in the sale of certain of said properties were capital asset losses. See also Workmen's Mutual Fire Ins. Society, Inc. v. A'Hearn, D.C., 170 F.Supp. 437, and Grier v. United States, D.C., 120 F.Supp. 395, affirmed, 2 Cir., 218 F.2d 603

■ We are of the opinion that the legislature, in enacting the 1953 amendment to Section 143.100, supra, which, inter alia, excluded from "capital assets" real estate used in the taxpayer's trade or business, did not intend that said exclusion would apply to real estate owned, managed, and used in the manner in which plaintiffs held the Rialto Building. The mere fact that the exclusionary provision in question was included in the foregoing amendment does not indicate that it was intended to apply to real estate used in the manner plaintiffs used their building. It is common knowledge that there are many situations where real estate is used in the conduct of an independent "trade or business." Certainly, none of the plaintiffs were using the building in question in the conduct of a trade or business unless it may be said that the fact that they received a rental income therefrom would constitute a use thereof "in his trade or business." We see nothing in the statute to indicate an intent that the exclusionary clause should apply to real estate simply because it produces rental income for the owner.

We recognize that our holding must be restricted to the factual situation here presented and that any suggestion as to other situations to which the provision under consideration would apply would be entering the field of obiter dictum. However, we have the very general view that the words used therein, particularly the pro-

noun "his" in modifying the phrase "trade or business," would indicate an intent that the provision should apply to a principal or substantial time-consuming occupation or business and not to every use of real estate which might result in the receipt of some income by the taxpayer.

■ When the particular facts of this case are considered in connection with the wording of the exclusionary clause relied upon by respondents, the real estate here involved appears to us to partake more of the nature of property held for investment rather than property used in a trade or business. We accordingly rule that the Rialto Building, although used for the production of rental income, was not real property used in the trade or business of the plaintiffs within the meaning of Section 143.100, supra, as re-enacted in 1953.

In their brief respondents point to the fact that the provision under consideration was ostensibly "copied from the Federal Internal Revenue Code (26 U.S.C.A. Internal Revenue Code of 1939, as amended, § 117). Under such circumstances, the rule that where an act adopted by the Missouri General Assembly is taken from a federal act, the interpretations of the federal act are persuasive in interpreting the Missouri act is applicable. American National Insurance Company v. Keitel, 353 Mo. 1107, 186 S.W.2d 447; John A. Moore & Co. v. McConkey, 240 Mo.App. 198, 203 S.W.2d 512." We have considered that rule and are cognizant of the fact that at the time the instant provision was adopted most of the federal decisions were contrary to our ruling herein. However, while the construction placed upon the federal statute at that time is persuasive, it is not controlling, In re Rosing's Estate, 337 Mo. 544, 85 S.W.2d 495, and we do not consider such to be of sufficient weight to overcome the force of the other factors we have heretofore detailed.

The judgment is reversed and cause remanded with directions to the trial court to set aside its judgment of affirmance and to enter a new judgment in accordance with the views herein expressed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.