DAVID F. WOLYN, Plaintiff-Appellant, *v.* INTERLAKE STEEL CORPORATION *et al.*, Defendants-Appellees.

(No. 57028;

First District (5th Division)—January 11, 1974.

Samuel Edes and Sinclair Kossoff, of Edes and Rosen, of Chicago, for appellant.

Thomas D. Allen and James P. Dorr, both of Chicago (Wildman, Harrold, Allen & Dixon, of counsel), for appellees.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Plaintiff appeals from a judgment for defendant notwithstanding the verdict of the jury in his favor.

Plaintiff, a retired employee of Howell Company, brought this action against Interlake Steel Corporation, successor to his employer, and the Continental Bank, as trustee of Interlake's retirement plan, seeking both a declaratory judgment that he was covered by Interlake's retirement plan for salaried employees and damages in the amount of all pension installments theretofore due him under the plan. A second count based on promissory estoppel was dismissed without objection of plaintiff at the close of plaintiff's evidence in chief.

At the close of all the evidence, the only issue submitted for determination by the jury was in the form of a special interrogatory as to whether plaintiff was a "salaried employee" within the meaning of the retirement plan. The jury answered "Yes." The trial judge, however, allowed defendants' motion for judgment notwithstanding the verdict for plaintiff, and conditionally denied defendants' motion for a new trial.

Plaintiff appeals, urging that the trial court erred in entering judgment notwithstanding the jury's verdict.

The evidence shows that Wolyn was hired by the Howell Company on September 1, 1945. He continued thereafter as a full-time employee of Howell, even subsequent to its acquisition by Acme Steel Company, until January, 1963, five months after he reached his 65th birthday.

By virtue of a merger with Acme in 1964, defendant Interlake Steel Corporation succeeded to Acme's obligations under the latter's pension plans. Plaintiff claims to be entitled to benefits under Acme's "Howell Company Retirement Plan B." This plan includes in its coverage those

who were participants under its predecessor, "Acme Steel Employees Retirement Plan B."

The predecessor plan provided that "A Participant who retires on or after his normal retirement date shall be eligible to receive a normal retirement benefit, which is a monthly benefit payable for life. The term "Participant" includes "Any present or future employee *who is regarded by the Employer as a permanent salaried employee* \* \* \* if, on [November 1, 1955], he has completed at least one (1) year of continuous service and is not more than age sixty (60) years and six (6) months, nor less than age twenty-nine (29) and six (6) months \* \* \*." (Emphasis added.) Defendants have conceded that plaintiff was a permanent employee who met the age and service requirements. But they point out that except for the first four months of his employment, when he received a fixed amount as compensation, Wolyn was paid each month in an amount equal to five per cent of his monthly sales; and that such payments are ordinarily considered commissions and not salary, citing *Commonwealth Life & Accident Insurance Co. v. Board of Review of the Department of Labor*, 414 Ill. 475, 484-5, 111 N.E.2d 345.

The only issue, then, is the one submitted to the jury: whether Wolyn was "regarded by the Employer as a permanent salaried employee," so as to be covered by the plant. The parties agree that the classification scheme of this particular employer and not that of industry generally should control the outcome.

■■ In considering plaintiff's appeal, we must determine whether "all of the evidence, when viewed in its aspect most favorable to the [plaintiff], so overwhelmingly favors [defendant] that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504.) We are reminded that all evidence must be considered; "the presence of *some* evidence of a fact which when viewed alone may seem substantial, does not always when viewed in the context of all the evidence, retain such significance." *Pedrick*, at 505.

A study of the evidence will show that plaintiff's evidence, while having some weight, is insignificant in the context of the evidence as a whole.

*Testimony of Lawrence Allison*

Lawrence T. Allison was employed by Howell from 1953 to 1970 as controller and then as vice president. It was his responsibility to handle all financial matters at the Howell Division level of the Acme Steel Company, including salaried payroll, the computation of commissions earned by commissioned salesmen, and pension plans. Allison testified that Howell had two classifications of salesmen: salaried and commissioned. He stated that plaintiff was classified as a commissioned em-

ployee, that commissioned employees were never covered by the plan, and that the commissioned salesmen were the only employees who were not covered by the plan.

Allison was required to submit annually a list that contained the names of active employees covered by the pension plan and the names of retired employees who were on a pension. Plaintiff's name was never on one of these lists, nor were the names of two other commission employees who retired without pensions. The lists were submitted to actuaries who determined each year the amount of contributions necessary for the company to contribute in order to maintain the pension fund. The fund is maintained entirely by employer contributions.

Plaintiff maintains that Allison's testimony need not have been believed by the jury, because of certain lapses in the witness' memory, and because Allison failed to produce any of the lists he had prepared prior to July 1, 1963. Allison was unable to remember each of the approximately 100 names on the lists since 1955, and he could not recall the precise number of years for which he personally, rather than as an employee under his supervision, prepared the lists. Failures in recollection such as these do not defeat the unequivocal nature of his testimony of company policy concerning the classifications in which the company regarded its salesmen. Nor do they have an impact on the reliability of his recollection that, during his [Allison's] 17 years with the company, Wolyn was one of only three commission salesmen to retire, and that his name was not on the lists. Allison also recalled clearly that during that period no commission salesman received a pension. Furthermore, these lists were available to plaintiff through normal discovery channels. The burden is on him to prove that his name was on earlier lists; he cannot rely on the absence of these lists when he himself could have assured their admission into evidence.

*Letter from Lawrence Allison*

On July 13, 1961, Allison sent a letter to six Howell salesmen whose status was being changed from salaried to commissioned. The letter purported to inform them of changes in various aspects of their selling operations and in benefits provided by the company that resulted from the change in status. A clear statement of company policy, written more than one year prior to plaintiff's termination and retirement, is contained in the following paragraph of the letter:

> "2. Pension Plan. Those of you who are in the Pension Plan are eliminated from this plan as of July 1, 1961. You are also losing the Bankers Life Insurance that was made available to you with the Pension Plan. The Pension Plan has *never* been available to Howell commissioned salesmen." (Emphasis added.)

Plaintiff has argued that this letter, written almost six years after the effective date of the plan and prefaced with the phrase, "So that there is no future misunderstanding here are the answers to your question," may be seen as a change of position by the employer and as evidence that the six new commissioned salesmen were under the impression that the pension plan did cover them. This inference is indeed a tenuous one, especially where, as here, plaintiff did not object to the dismissal of his estoppel claim, where the term "your questions" in the letter indicates the employees' doubt about rather than reliance upon coverage, and where the issue in this case is whether the employer, not the employees, regarded the plaintiff as covered by the plan.

*Plaintiff's case*

Wolyn's own expert on industrial relations testified that booklets are customarily sent to employees covered by pension plans to inform them of their provisions. Allison testified that the company did in fact send explanatory booklets to those who were covered by its pension plan. Wolyn himself testified that he did not receive any correspondence from his employer directed either to him personally or to employees generally concerning pension or retirement rights. Furthermore, he made no inquiries concerning pension coverage prior to his retirement. Standing alone, plaintiff's argument that his failure to receive a booklet is an oversight has some weight. But it is reduced to mere speculation in light of Allison's letter and testimony and plaintiff's own inaction.

*The plan itself*

The pension plan states that benefits are based upon "Final Earnings," defined as "the Participant's average annual compensation, exclusive of overtime pay, Christmas gifts or other special awards, for the ten (10) year period ending with his normal retirement date." Reading this language literally, Wolyn claims that his benefits should be based upon the gross commissions he received during the last ten years of his employment. In doing so, he seeks to obtain benefits based in part on his expenses, almost all of which he paid from his income. Salesmen who were compensated by salary received considerably less than those who, like plaintiff, were paid on a commission basis. But, unlike plaintiff, salaried salesmen were reimbursed for their expenses by the company. Thus, were plaintiff's position to be accepted, the salaried salesmen as well as the company, which financed the plan exclusively through its own contributions, would be disadvantaged.

To avoid this inequity, the company would have had to ascertain plaintiff's expenses to bring his annual earnings in line with those of the salaried employees. Plaintiff was never asked for this information. In addition, the Banker's Life Insurance policy that was available to those

covered under the pension plan and, according to Allison's letter, not available to commissioned salesmen, provides that life insurance would be based on the "annual regular salary rate as determined by the Company." Had plaintiff attempted to apply for insurance coverage, he would have been unable to compute an amount of insurance, because he did not have an "annual regular salary rate."

### Testimony of Matthew Trahan

Matthew Trahan, defendant's supervisor of salaried payroll, testified that plaintiff's earning records were maintained under his jurisdiction. Those that have been reduced to microfilm are kept in boxes labeled "Employees Earnings Records, Salaried." Trahan also testified that the records are separated as far as payments are concerned.

### Testimony of Curry Lyons

Curry Lyons, supervisor of salaried employee benefits, testified that his department processed some hourly employees as a matter of convenience.

This, we believe, indicates merely that small adjustments in departmental jurisdictions are made in the Interlake corporate structure. Particularly here, where only about 25 employees are concerned, it is not an unlikely conclusion that convenience dictated that the record-keeping process include commissioned employees along with salaried employees under a single rubric. In any event, the mere label chosen by the company for its operations has little weight compared to a clear statement of policy.

### Testimony of Hy Fish

Professor Hy Fish was called by plaintiff as an expert in industrial relations. Over defendants' objection he was permitted to testify that he would consider a commissioned salesman to be in a salary classification. This personal opinion was to his mind supported by that of a leading authority in the field. On cross-examination the witness admitted that he had no familiarity whatsoever with Howell's operations, the compensation of its sales force, or its pension plans.

The use of the term "salaried employee" in the steel industry or in broader industrial circles is relevant only in so far as an inference may be drawn from prevailing usage that the term was in fact used as a term of art by Interlake's predecessors in the same manner. By no means is it conclusive.

### Report to shareholders

A special report to shareholders dated three months after plaintiff's termination set forth the pension plan policy objectives of the company and indicated that "78% of the Company's employees were already covered by plans that either met these objectives or were negotiated plans

with unions other than the steelworkers. [¶] The other 22% were covered by two salaried plans, Plan A and its supplement and Plan B."

It is true, as plaintiff contends, that the percentages account for 100% of the employees. But the report was designed to justify the advisability of offering a pension plan and to clarify its effect on the company's earnings; it is necessarily couched in general terms. To have omitted specific reference to the 0.4% of the employees who were commissioned salesmen and to have rounded off the figures to the nearest whole per cent are not inconsistent with the sense of the report. Indeed, to have done otherwise would have been a remarkable overemphasis on minutiae.

*Letters from W. R. Stead*

In a letter dated April 22, 1963, W. R. Stead, then secretary of Acme, replied to an inquiry from plaintiff's wife as follows: "With regard to your inquiry as to the definition of 'salaried' employees, please be advised that the term 'salaried' generally applies to employees who are not unionized, and the term 'hourly' applies to those who belong to a union." This would support Wolyn's contention as to his status. But the letter goes on to say:

> "An hourly employee receives pay only for the number of actual hours worked, whereas a salaried employee receives a fixed sum per week or per longer period, with deductions made only in the event of certain special circumstances."

Plaintiff received varying sums per month, not a fixed sum.

A month later Stead wrote once again, albeit after he was aware of plaintiff's intent to claim benefits under the plan. The letter stated in part:

> "I have consulted with our insurance people and have been advised that during your period of employment you were paid by commissions and did not receive a salary at any time. Because of this fact, of course, you have no pension rights as far as Acme Steel Company is concerned."

*Letter from Eloise Thomas*

Eloise Thomas, the person who filed hospital claims under Howell's health and accident insurance program for nonhourly employees, wrote to plaintiff's wife in a letter dated June 16, 1960, that "your husband as a salaried employee is covered by the Accident Coverage as explained by copy of letter attached." Attached was a copy of a memorandum dated December 30, 1958, addressed "To All Salaried Employees," announcing the adoption by the company of a new accident policy. The policy itself reveals, however, that all employees, whether salaried or not, are covered by the insurance policy. This was supported by the testimony of Interlake's assistant treasurer, Leonard Hellerich. Moreover, as testified to by

her supervisor, Eloise Thomas had no authority to determine who was eligible for coverage under the health and accident plans that she dealt with, let alone under the pension plans with which she had nothing to do. ■■ In summary, we do not believe that the trial judge, when faced with all the evidence presented above, merely disagreed with the special verdict delivered by the jury or thought himself to be more reasonable than the jurors. Were this the case, we would reverse the judgment of the trial court and direct judgment consistent with the special verdict. (*Cf. Deaver v. Hickox*, 121 Ill.App.2d 465, 256 N.E.2d 866.) Rather, we believe that even when viewed in its aspect most favorable to plaintiff, the totality of the evidence overwhelmingly favors defendants. *Pedrick*, 37 Ill.2d at 505.

Therefore, we affirm the judgment.

Affirmed.

DRUCKER and LORENZ, JJ., concur.